1 | Mark T. Flewelling (#96465)
mflewelling@afrct.com
2 | Christopher A. Carr (#44444)
ccarr@afrct.com
3 | ANGLIN, FLEWELLING, RASMUSSEN
CAMPBELL & TRYTTEN, LLP
4 | 199 South Los Robles Avenue, Suite 600
Pasadena, CA 91101-2459
5 | (626) 535-1900
(626) 577-7764 (Facsimile)
6 |
7 | Attorneys for Defendant WORLD SAVINGS
BANK, FSB, renamed and now known as
WACHOVIA MORTGAGE, FSB
8 |

9 | UNITED STATES DISTRICT COURT

10 | NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO BRANCH

11 |

12 | DAYA NAND and SHRI MATI,                )  Case No. C-08-01529-SI
                                          )
13 |              Plaintiffs,               )
                                          )  DEFENDANT WORLD SAVINGS
14 |         vs.                            )  BANK, FSB's NOTICE OF
                                          )  MOTION AND MOTION TO
15 | SCOTT RICHARD SMITH, dba              )  DISMISS; MEMORANDUM OF
      MORTGAGENET 2000; JEFFREY            )  POINTS AND AUTHORITIES
16 | JAMES TWOMEY, an individual;          )  [FRCP 9 and 12(b)(6)]
      ANGAD SINGH, an individual;          )
17 | GREENPOINT MORTGAGE                   )
      FUNDING, INC.; WORLD SAVINGS,        )
18 | aka WACHOVIA; GMAC MORTGAGE           )  Date: May 9, 2008
      CORPORATION; and DOES FOUR           )  Time: 9:00 A.M.
19 | through TWENTY, inclusive,            )  Courtroom: 10
                                          )
20 |              Defendants.              )
      _____)
21 |

22 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

23 |

24 |      PLEASE TAKE NOTICE that on May 9, 2008, at 9:00 a.m. in

25 | Courtroom 10 of the above-entitled court, located at 450 Golden Gate Avenue,

26 | San Francisco, California, the Honorable Susan Illston, United States District

27 | Court Judge presiding, defendant World Savings Bank, FSB (sued as World

28 |

1    Wachovia), renamed and now known as Wachovia Mortgage FSB ("World") will,

2    and hereby does, move pursuant to FRCP Rules 9 and 12(b)(6) for an order

3    dismissing the Second Amended Complaint as against World.

4         Grounds for the motion are that plaintiffs not only fail to plead fraud with

5    particularity against World, but also fail to state any claim for which relief can be

6    granted.

7         The motion is based on this notice, the accompanying memorandum of

8    points and authorities, the matters specified in the accompanying Request for

9    Judicial Notice, the documents attached to the accompanying declaration of

10   Michael Goldberg, and on World's argument at the hearing.

11

12                                        Respectfully submitted,

13   Dated:  March 27, 2008             ANGLIN, FLEWELLING, RASMUSSEN,
                                        CAMPBELL & TRYTTEN LLP
14

15

16   By:_____

17        Christopher A. Carr
          ccarr@afrct.com
          Attorneys for Defendant WORLD
18        SAVINGS BANK, FSB, renamed and now
          known as WACHOVIA MORTGAGE,
19        FSB

20

21

22

23

24

25

26

27

28

J:\Docs\95451.029\Motn to Dismiss-145303.DOC          2

# **TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES .................................. 1

1.  INTRODUCTION .................................................................. 1

2.  PROCEDURAL BACKGROUND ........................................... 1

3.  SUMMARY OF THE SAC AS IT RELATES TO WORLD ................ 2

4.  THE FIRST CAUSE OF ACTION FOR FRAUD IS DEFICIENT AS AGAINST WORLD .................................................................. 3

5.  THE SECOND CAUSE OF ACTION FAILS BECAUSE PLAINTIFFS DO NOT STATE THE ELEMENTS OF A CONSPIRACY AND WORLD SAVINGS DID NOT OWE THEM A TORT DUTY OF CARE .......................................................... 4

6.  THE THIRD CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE DOES NOT APPLY TO WORLD ....................... 7

7.  THE FOURTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY ALSO DOES NOT APPLY TO WORLD .......... 7

8.  THE FIFTH CAUSE OF ACTION FOR GROSS NEGLIGENCE IS PREEMPTED BY FEDERAL LAW AND FAILS BECAUSE WORLD DID NOT OWE PLAINTIFFS A TORT DUTY OF CARE . 7

    A.  HOLA Preempts Plaintiffs' Claim. ............................... 8

    B.  World Did Not Owe Plaintiffs a Tort Duty of Care .................... 9

9.  THE SIXTH CAUSE OF ACTION FOR RESCISSION FAILS AS AGAINST WORLD .................................................................. 10

10. THE SEVENTH CAUSE OF ACTION FAILS BECAUSE THERE WAS NO AGENCY RELATIONSHIP WITH WORLD ................... 13

11. THE NINTH CAUSE OF ACTION FOR AN ACCOUNTING DOES NOT STATE A VALID CLAIM AGAINST WORLD ....................... 15

12. CONCLUSION .................................................................. 15

# TABLE OF AUTHORITIES

Page

## Cases

*Ackerman v. Northwestern Mut. Life Ins. Co.*
172 F.3d 175, 178 (7th Cir. 1999).........................................................10

*Applied Equipment Corp. v. Litton Saudi Arabia, Ltd.*
7 Cal.4th 503, 511 (1994)...............................................................11, 12

*Bank of Am. v. City & County of S.F*
309 F.3d 551 (9th Cir. 2002)..............................................................14

*Bender v. Suburban Hosp.*
159 F.3d 186, 192 (4th Cir. 1998).....................................................17

*Branch v. Tunnell*
14 F.3d 449, 454 (9th Cir. 1994).......................................................18

*Cellular Plus, Inc. v. Superior Cour*
14 Cal. App. 4th 1224 (1993)............................................................11

*Collins v. FMHA-USDA*
105 F.3d 1366 (11th Cir. 1997).........................................................17

*Ellington v. Burlington Northern, Inc.*
652 F.2d 1327, 1329-30 (9th Cir. 1981)............................................21

*Everest Investors 8 v. Whitehall Real Estate Ltd. P'ship XI*
100 Cal.App.4th 1102, 1107 (2002)..................................................12

*Fidelity Federal Sav. & Loan Assn. v. De la Cuesta*
458 U.S. 141, 159-160 (1982)...........................................................15

*Galbraith v. County of Santa Clara*
307 F.3d 1119, 1127 (9th Cir. 2002)..................................................18

*Haehl v. Washington Mut. Bank, F.A.*
277 F.Supp.2d 933, 940 (S.D. Ind. 2003) .........................................15

*Hellbaum v. Lytton Sav. & Loan Assn.*
274 Cal. App.2d 456, 459-460 (1969)...............................................16

*Jefferson v. Ambrose*
90 F.3d 1291, 1296 (7th Cir. 1996)....................................................20

*Kidron v. Movie Acquisition Corp.*
40 Cal.App.4th 1571, 1582 (1995).....................................................11

*Lopez v. World Savings and Loan Association*
105 Cal.App. 4th 729, 738 (2003)......................................................14

*Mesmer v. White*
121 Cal.App.2d 665, 670 (1953)...................................................10, 12

*Mullis v. United States Bank*
  Ct. 828 F.2d 1385, 1388 (9th Cir. 1987) .................................................. 18

*Nymark v. Hart Federal Savings & Loan Assn.*
  231 Cal.App.3d 1089, 1096 (1991) ............................................. 12, 13, 15

*Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*
  998 F.2d 1192, 1196 (3rd Cir. 1993) ......................................................... 18

*Silvas v. E\*Trade Mortgage Corporation*
  514 F.3d 1001 (9th Cir., January 2008) ..................................................... 14

*Software Design and Application Ltd. v. Hoeffel & Arnold Inc.*
  49 Cal.App.4th 472, 481 (1996) ................................................................. 16

*Tarmann v. State Farm Mut. Auto. Ins. Co.*
  2 Cal.App.4th 153, 157 (1991) .................................................................. 12

*Vess v. Ciba-Geigy Corp. USA*
  317 F.3d 1097, 1106 (9th Cir. 2003) ......................................................... 10

*Wagner v. Benson*
  101 Cal.App.3d 27, 35 (1980 ..................................................................... 16

*Wasco Prods. v. Southwall Techs., Inc.*
  435 F.3d 989, 992 (9th Cir. 2006) ............................................................. 11

*Weisbuch v. County of Los Angeles*
  119 F.3d 778, 783 n.1 (9th Cir. 1997) ................................................. 17, 19

*Wyatt v. Union Mortgage Co.*
  24 Cal.3d 773, 785 (1979) ........................................................................ 11

## **Statutes**

12 C.F.R. §560.2(b)(4)(10) ........................................................................ 14

12 C.F.R. §560.2(c) .................................................................................... 14

12 C.F.R.§560.2 .......................................................................................... 14

12 U.S.C. §1461 .......................................................................................... 14

12 U.S.C. §2615 .......................................................................................... 17

12 U.S.C. §3500.7 ....................................................................................... 17

15 U.S.C. §1602(aa) .................................................................................... 16

15 U.S.C. §1635(a) ...................................................................................... 16

15 U.S.C. §1639(a)(1) ................................................................................. 16

## **Regulations**

10 California Code of Regulations 1452 ..................................................... 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1.    INTRODUCTION

Plaintiffs are borrowers who were allegedly duped into entering unfavorable mortgage loans by certain unscrupulous mortgage brokers and other individuals.  For almost a year and a half, plaintiffs have pursued claims against these mortgage brokers and individuals in Alameda County Superior Court.

Apparently less than sanguine about their prospects of obtaining a recoverable judgment against those defendants, plaintiffs recently filed a Second Amended Complaint ("SAC"), which for the first time names the lenders who funded the loans as defendants.  One such lender is World Savings Bank, FSB, now known as Wachovia Mortgage, FSB ("World").  Unfortunately for plaintiffs, their pleaded facts are insufficient to support a claim against World and the SAC must be dismissed as to it.

## 2.    PROCEDURAL BACKGROUND

Plaintiffs commenced this litigation on October 25, 2006, by filing a complaint in Alameda County Superior Court against defendants Scott Richard Smith, dba Mortgagenet 2000, Jeffrey James Twomey, and Angat Singh; for purposes of this Motion, such defendants are collectively referred to as "the Brokers".  A copy of that complaint is attached to World's Notice of Removal as Exhibit A, comprising pages 5-28 of that Notice (hereinafter, "Notice, p.__"); no lenders were named as defendants.  The allegations of that complaint were verified by both plaintiffs under penalty of perjury (Notice, pp. 27-28).

On January 19, 2007, plaintiffs filed a First Amended Complaint ("FAC") in the Alameda County case, a copy of the FAC is Notice, pp. 29-55.  Again, no lenders were named as defendants and the allegations of the FAC were verified by both plaintiffs under penalty of perjury (Notice, pp. 53-54).

Over a year later, on March 5, 2008, plaintiffs filed the SAC; a copy is Notice, pp. 56-86.  For the first time, (a) three lenders, including World, are

1  named as defendants, and (b) there are allegations that the lenders, including

2  World, violated two different Federal statutes, which are 15 U.S.C. §§1639 and

3  1641 (SAC ¶79, at Notice, p. 80).  In comparing the captions of FAC and SAC, it

4  appears that the FAC names "Does One through Twenty", whereas the SAC

5  names "Does Four through Twenty".  While World was not served with any

6  amendment naming it as a Doe, from the change in the caption World assumes

7  that plaintiffs meant to serve it and the other two lenders as Does One, Two and

8  Three; however, World can not tell which one of the three numbers might apply to

9  it.  The importance of this aspect is the broad brush allegation found at SAC ¶7

10  (Notice, p. 58) that all defendants, including Does One through Twenty, were the

11  agents of each other.  Thus, while only the Second, Fifth, Sixth and Seventh

12  Causes of Action in the SAC are nominally directed at World, because of the

13  "chain pleading" aspect of the SAC, where many paragraphs from earlier causes

14  of action are incorporated into later causes, every cause of action of the nine

15  asserted (with the exception of the eighth) might be seeking to impose liability

16  upon World.

17      None of the complaints allege World's status, but as shown by Document 4

18  in the accompanying Request for Judicial Notice, World was at all material times

19  a federally chartered savings bank subject to the jurisdiction of the Office of

20  Thrift Supervision, Department of the Treasury.  World was renamed Wachovia

21  Mortgage, FSB a few months ago, as shown by Document 5 in said Request, but

22  this occurred after all the events alleged in the SAC.

23      3.   UNDERLINE SUMMARY OF THE SAC AS IT RELATES TO WORLD

24      Plaintiffs allege four improper loans with three different lenders based on

25  the allegedly fraudulent conduct of the Brokers, but only one of those loans

26  involves World; the allegations surrounding this loan are set forth commencing at

27  Notice, p. 58.  It is alleged that on or about March 20, 2006, plaintiffs' friend and

28  co-worker, Angat Singh, told plaintiffs he had a mortgage brokerage business and

1  offered to assist plaintiffs in obtaining a new loan on their home (SAC ¶8, at

2  Notice, p. 58).  Plaintiffs agreed to Mr. Singh's offer and "hired him to arrange a

3  new loan" (SAC ¶8).  Mr. Singh allegedly is an employee or agent of defendant

4  Scott Richard Smith and solicits loans on behalf of Mr. Smith (SAC ¶¶5, 29, at

5  Notice, pp. 57, 68); allegedly, Mr. Smith does business as "Mortgage Net 2000"

6  (SAC ¶3, at Notice, p. 57).  Plaintiffs also assert that World and the other two

7  lenders "appointed Mr. Smith and his employee, Mr. Twomey, as their agents to

8  perform required duties to plaintiffs as borrowers and principals" (SAC ¶7).

9         At some unspecified time after March 20, 2006, Mr. Singh negotiated with

10  World to obtain a new loan for plaintiffs (SAC ¶10, at Notice, p. 59).  Mr. Singh

11  and a notary met with plaintiffs at a Baskin-Robbins store apparently owned by

12  Mr. Singh in order to get loan papers signed (SAC ¶10).  Plaintiffs signed the

13  papers and were provided a copy by Mr. Singh before plaintiffs left the meeting

14  (SAC ¶10).  Escrow on the World loan closed on May 16, 2006 (SAC ¶11, at

15  Notice, p. 60).  As part of that closing, plaintiffs paid a commission of $11,390 to

16  Mortgage Net (SAC ¶12, at Notice, p. 60).

17         From these facts, plaintiffs attempt to hold World responsible for the

18  conduct of Singh.  There is no basis for such liability and the SAC must be

19  dismissed as to World Savings.

20      4.    THE FIRST CAUSE OF ACTION FOR FRAUD IS DEFICIENT AS

21                         AGAINST WORLD

22         By its terms, this cause of action is nominally not directed at World (SAC,

23  before ¶27, at Notice, p. 67).  However, due to the vague allegations of agency,

24  World briefly addresses this claim; it is more particularly discussed in the

25  following section regarding the Second Cause of Action for "Conspiracy to

26  Commit Fraud".

27         Rule 9 of the Federal Rules of Civil Procedure requires that the elements of

28  fraud be pleaded with particularity.  In multiple defendant cases, this means that

1    each defendant is entitled to be informed of the specific acts or omissions which it

2    must defend.  *Vess v. Ciba-Geigy Corp. USA* 317 F.3d 1097, 1106 (9th Cir. 2003).

3    The SAC contains absolutely no allegation of how World itself, as contrasted with

4    some other defendants, did anything fraudulent.  Instead, the only claim against

5    World is that the Brokers acted improperly and the Brokers were World's agents.

6    This clearly does not meet the "who, what, when and where" requirement insofar

7    as World is concerned.  *Ackerman v. Northwestern Mut. Life Ins. Co.* 172 F.3d

8    175, 178 (7th Cir. 1999).

9         Second, although the SAC is not clear, it does not appear that plaintiffs are

10   alleging that any fraudulent documents were prepared or signatures forged in

11   connection with the World loan, although such allegations are made with regard

12   to the other loans.  Rather, as against World, plaintiffs merely allege various

13   failures to disclose by the Brokers (SAC, ¶¶8-13, at Notice pp. 58-60, and ¶¶29-

14   33, at Notice, pp. 68-69).  At most, these paragraphs allege fraud by omission.

15   They do not allege any affirmative statements supporting a claim for fraud.  In

16   order for a fraud claim based on an omission to stand, the defendant ordinarily

17   must have been in some fiduciary relationship to the plaintiff giving rise to a duty

18   to disclose.  *Mesmer v. White*, 121 Cal.App.2d 665, 670 (1953).  As discussed

19   below, World had no such fiduciary relationship to plaintiffs.

20   5.    THE SECOND CAUSE OF ACTION FAILS BECAUSE PLAINTIFFS DO

21         NOT STATE THE ELEMENTS OF A CONSPIRACY AND WORLD

22         SAVINGS DID NOT OWE THEM A TORT DUTY OF CARE

23        Plaintiffs' second cause of action asserts liability against all defendants

24   based on a "conspiracy to commit fraud."  This claim fails as a matter of law.

25        Under California law, "to state a cause of action for conspiracy, the

26   complaint must allege (1) the formation and operation of the conspiracy, (2) the

27   wrongful act or acts done pursuant thereto, and (3) the damage resulting from

28   such act or acts."  *Wasco Prods. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th

1  Cir. 2006) (quoting *Cellular Plus, Inc. v. Superior Court*, 14 Cal. App. 4th 1224

2  (1993).

3      Each of these elements must be pled with particularity consistent with

4  FRCP 9(b). *Alfus v. Pyramid Technology Corp.*, 745 F. Supp. 1511, 1521 (N.D.

5  Cal. 1990); *see also Wasco Prods., supra*, 435 F.3d at 991 (holding that specific

6  pleading is required for any conspiracy based on an alleged fraud). As this court

7  explained in *Alfus*, "To survive a motion to dismiss, plaintiff must allege with

8  sufficient factual particularity that defendants reached some explicit or tacit

9  understanding or agreement." *Id.*   Conclusory allegations regarding the existence

10  of a conspiracy or common goals are not enough. Rather, " a factually specific

11  allegation that they directed themselves towards this wrongful goal by virtue of a

12  mutual understanding or agreement" is required. *Id.*

13      Vicarious liability via a conspiracy theory requires knowledge of the tort

14  and intent to aid in its commission. *Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773,

15  785 (1979). The alleged coconspirator must have *actual knowledge* of the

16  planned tort and concur in the tortious scheme with knowledge of its unlawful

17  purpose. *Kidron v. Movie Acquisition Corp.* 40 Cal.App.4th 1571, 1582 (1995).

18  Moreover, a co-conspirator can only be liable if it is legally capable of

19  committing the tort charged. *Applied Equipment Corp. v. Litton Saudi Arabia,*

20  *Ltd.*, 7 Cal.4th 503, 511 (1994). Thus, a co-conspirator defendant must owe a

21  legally recognized duty to the plaintiff for which he can be held liable based on a

22  breach of that duty. *Id.*

23      Plaintiffs have pleaded only that World "knowingly and willing conspired

24  and agreed" to commit the acts in (SAC) ¶¶26-33. They present no "factually

25  specific allegation that they directed themselves towards this wrongful goal by

26  virtue of a mutual understanding or agreement". *Alfus, supra,* 745 F.Supp. at

27  1521. The SAC is devoid of any factual specifics as to the nature of the

28  agreement, when it was entered, who entered it on behalf of World, or the basis

1  for World's actual knowledge of the Brokers' purportedly fraudulent scheme.[1]

2  The SAC fails to satisfy the specific pleading requirements for conspiracy based

3  on fraud.

4      As previously noted, a fiduciary relationship is required to create a duty of

5  disclosure when the alleged fraud consists of a non-disclosure. *Mesmer,*

6  *supra,* 121 Cal.App. 2d at p. 670. World did not have any such duty to disclose.

7  Plaintiffs allege the Brokers had a fiduciary duty (SAC ¶¶63-71, at Notice, pp. 76-

8  78), but no such duty can extend to World. California law is clear that a

9  nonfiduciary defendant cannot be liable for conspiring with a fiduciary defendant

10  to breach the fiduciary duty to the plaintiff. *Everest Investors 8 v. Whitehall Real*

11  *Estate Ltd. P'ship XI,* 100 Cal.App.4th 1102, 1107 (2002). Any duty to disclose

12  arose out of the Brokers' fiduciary duty. World cannot be liable for an alleged

13  conspiracy to breach that duty.

14      Indeed, the SAC makes clear that World was acting in its conventional role

15  as a lender of money. As such, it did not owe plaintiffs a duty to disclose any of

16  the omissions alleged in ¶¶26-33. *Nymark v. Hart Federal Savings & Loan Assn.,*

17  231 Cal.App.3d 1089, 1096 (1991) ("[A]s a general rule, a financial institution

18  owes no duty of care to a borrower when the institution's involvement in the loan

19  transaction does not exceed the scope of its conventional role as a mere lender of

20  money.") Without a duty of care, there can be no special duty to disclose. Thus,

21  World had no legally recognized duty to plaintiffs for these alleged omissions and

22  cannot be liable under a conspiracy theory. *Applied Equipment Corp., supra,* 7

23  Cal.4th at 511.

24      Plaintiffs' conspiracy claim must be dismissed with prejudice. No further

---

[1] As the California Court of Appeal has explained, "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 157 (1991).

1  amendments can create a duty where none exists.

2  6.    THE THIRD CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

3                          DOES NOT APPLY TO WORLD

4        This cause of action is nominally not directed at World and World assumes

5  that plaintiffs do not contend that World is somehow liable for any professional

6  negligence on the part of the Brokers.  If such a contention is being made, then the

7  claim would be subject to preemption under HOLA, as more specifically

8  discussed herein under the fifth cause of action.

9  7.    THE FOURTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY

10                        DUTY ALSO DOES NOT APPLY TO WORLD

11       Again, this cause of action does not appear to be directed at World, and in

12  any event, World did not owe <u>any</u> duty of care to plaintiffs, let alone a fiduciary

13  one. *Nymark, supra,* at p. 1096.

14  8.    THE FIFTH CAUSE OF ACTION FOR GROSS NEGLIGENCE IS

15  PREEMPTED BY FEDERAL LAW AND FAILS BECAUSE WORLD DID

16                  NOT OWE PLAINTIFFS A TORT DUTY OF CARE

17       Plaintiffs' fifth cause of action charges gross negligence based on World's

18  decision to issue the loan despite receiving allegedly fraudulent loan applications

19  when World allegedly had information in its files showing that the applications

20  were untrue and plaintiffs could not repay the loans.  (SAC ¶¶73-74, at Notice p.

21  79).  Plaintiffs claim that by approving their loan application, World acted in

22  violation of 10 California Code of Regulations 1452 (SAC ¶74).  Although the

23  cause of action is denominated "Gross Negligence", that phrase does not appear

24  anywhere in the cause of action, and of course no duty or breach of duty is

25  alleged, as is required by any negligence claim.  Further, while this cause of

26  action appears to charge that there were falsehoods and forgeries involved with

27  the World loan application, that charge, at least insofar as the World loan is

28  concerned, appears to be inconsistent with the allegations of SAC ¶¶8-13, at

1    Notice, pp. 58-60. Those difficulties aside, apparently plaintiffs are essentially

2    claiming World is liable because it approved and funded inappropriate loans to

3    plaintiffs.

4        This claim fails for two reasons. First, HOLA preempts any claim that

5    World violated 10 CCR 1452. Second, World was acting in its traditional role as

6    a lender of money and owed plaintiffs no tort duty of care.

7        A.    HOLA Preempts Plaintiffs' Claim.

8        Pursuant to the Home Owners' Loan Act, 12 U.S.C. §1461 *et seq.*

9    ("HOLA"): "…OTS hereby occupies the entire field of lending regulation for

10   federal savings associations … Accordingly, federal savings associations may

11   extend credit as authorized under federal law, including this part, without regard

12   to state laws purporting to regulate or otherwise affect their credit activities…" 12

13   C.F.R.§560.2. As a recent California case stated:

14       "Thus, the federal regulation is intended to preempt all state laws
         purporting to regulate any aspect of the lending operations of a federally chartered
15       savings association, whether or not OTS has adopted a regulation governing the
         precise subject of the state provision." *Lopez v. World Savings and Loan*
16       *Association*, 105 Cal.App. 4th 729, 738 (2003).

17   Just two months ago, the Ninth Circuit affirmed this broad preemption principle in

18   *Silvas v. E*Trade Mortgage Corporation*, 514 F.3d 1001 (9th Cir., January 2008).

19       The "state law" that is preempted by HOLA includes "any state statute,

20   regulation, ruling, order or judicial decision." 12 C.F.R. §560.2(c). Among the

21   "state laws" preempted by HOLA are those relating to "(4) the terms of credit,

22   including amortization of loans…(10) Processing, origination (of) mortgages." 12

23   C.F.R. §560.2(b)(4)(10).

24       Case law over the years has cast a wide net over claims preempted by

25   HOLA. In *Bank of Am. v. City & County of S.F.*, 309 F.3d 551 (9th Cir. 2002) the

26   court held: "[S]ince the passage of the HOLA in 1933, OTS regulations have

27   governed the 'powers and operations of every federal savings and loan association

28   from its cradle to its corporate grave.'" *Id.* at 558. The Supreme Court has noted

1  that, "[i]t would have been difficult for Congress to give the [OTS] a broader

2  mandate." *Fidelity Federal Sav. & Loan Assn. v. De la Cuesta*, 458 U.S. 141,

3  159-160 (1982).

4       Plaintiffs' fifth cause of action alleges improper processing of the loan by

5  "approving and funding inappropriate loans to plaintiffs" (SAC ¶76, at Notice, p.

6  79). Plaintiffs claim World should not have issued the loans because it allegedly

7  "had sufficient information in [its] file to prove that the purported and forged

8  stated income of plaintiffs was untrue and that plaintiffs were not capable of

9  repaying the loans offered . . ." (SAC ¶74, at Notice, p. 79). These allegations

10  relate to the "origination," "terms of credit" and "processing" of the loans and

11  bring Plaintiffs' claim directly within the scope of HOLA preemption.[2]

12       That claims challenging the manner in which a federal savings bank

13  processed a loan application are preempted by HOLA was confirmed in *Haehl v.*

14  *Washington Mut. Bank, F.A.*, 277 F.Supp.2d 933, 940 (S.D. Ind. 2003). There,

15  the court noted that the OTS regulations preempt "any state statute or judicial

16  decision purporting to regulate . . . the processing and servicing of mortgages, or

17  any state statute or judicial decision that has more than an incidental effect on the

18  lending operations of federal savings associations". Plaintiffs' claim against

19  World -- that it improperly approved and funded the loan -- would 'purport to

20  regulate' the "processing" of a mortgage.

21       Plaintiffs' claim is regulated exclusively by the OTS and is preempted by

22  HOLA.

23       B.    World Did Not Owe Plaintiffs a Tort Duty of Care.

24       As noted above, World was acting in its traditional capacity as a lender of

25  money and did not owe plaintiffs a tort duty of care. *Nymark, supra*, 231

26  _____

27  [2] At the time the loan was issued World was known as World Savings Bank, FSB.
It is now Wachovia Mortgage, FSB. (Request for Judicial Notice Documents 4
and 5). Thus, at all relevant times it has been a federal savings bank falling within

28  the scope of HOLA.

1    Cal.App.3d at 1096.  Plaintiffs' theory that a bank owes a borrower a negligence

2    duty of care in the processing of their loan application has been soundly rejected

3    by California courts.  In *Wagner v. Benson*, 101 Cal.App.3d 27, 35 (1980), the

4    court found the bank owed borrowers no duty of care in approving their loan even

5    though plaintiffs were inexperienced investors, investing in a risky investment.

6    *See also Hellbaum v. Lytton Sav. & Loan Assn.,* 274 Cal. App.2d 456, 459-460

7    (1969)(rejecting claim that lender owed potential borrower duty of care in

8    processing application to assume a loan).

9         Because there was no duty, Plaintiffs' gross negligence theory must fail.  It

10   does not matter whether plaintiffs plead negligence or gross negligence.

11   "[A]bsent a duty, the defendant's care, or lack of care, is irrelevant." *Software*

12   *Design and Application Ltd. v. Hoeffel & Arnold Inc.*, 49 Cal.App.4th 472, 481

13   (1996).

14        No amount of amending can prevent HOLA preemption or create a duty

15   where none exists.  Thus, this claim should be dismissed with prejudice.

16        9.    THE SIXTH CAUSE OF ACTION FOR RESCISSION FAILS AS

17                          AGAINST WORLD

18        Although the Sixth Cause of Action is by no means a model of clarity, it

19   appears that plaintiffs are claiming that they are entitled to rescind the transaction

20   with World because World allegedly violated 15 U.S.C. §§1639 and 1641.  These

21   two sections are not applicable to the case at bar.  §1639(a)(1) states that the

22   section applies only to the "high cost" mortgages described in §1602(aa), and

23   plaintiffs do not plead (nor could they ever truthfully do so) that the World loan is

24   such a mortgage.  §1641 applies only to assignees of the beneficial interest of

25   mortgages; again, this has no applicability to World.  Engaging in every

26   conceivable inference as to what plaintiffs might be asserting, World assumes that

27   plaintiffs are claiming a right to rescind under §1635(a).  They plead at SAC ¶79

28   (Notice, at p. 80) that "Plaintiffs were not provided their Notice of Right to

1   Rescind . . . because lenders' agents took all the loan papers from plaintiffs

2   immediately upon their signing them". However, at least insofar as the World

3   loan is concerned, this allegation is squarely controverted by the pleading near the

4   end of SAC ¶10 "Mr. Singh gave plaintiffs a copy of the loan papers before they

5   left the meeting". This latter allegation was pleaded verbatim in FAC ¶10, and

6   the FAC was verified under penalty of perjury by both plaintiffs.

7       A plaintiff may plead himself out of court if the facts pled establish he

8   cannot prevail on his claim. *Weisbuch v. County of Los Angeles,* 119 F.3d 778,

9   783 n.1 (9th Cir. 1997*)*. As the Fourth Circuit explained, "while notice pleading

10  does not demand that a complaint expound the facts, a plaintiff who does so is

11  bound by such exposition." *Bender v. Suburban Hosp.*, 159 F.3d 186, 192 (4th

12  Cir. 1998). Here, plaintiffs have expressly pleaded that they were given copies of

13  the loan papers for the World loan, so the allegation upon which their rescission

14  claim is based ("the Brokers took the papers") is demonstrably untrue from the

15  face of the SAC.

16      Plaintiffs also refer in SAC ¶79 to a purported failure to provide a "good

17  faith estimate", although they refer to an incorrect statute. Again, presumably

18  plaintiffs might be referring to the obligation contained in the Real Estate

19  Settlement Procedures Act (RESPA), found at 12 U.S.C. §3500.7, to provide a

20  good faith estimate of closing costs. However, even if RESPA is violated, it does

21  not entitle the borrower to rescission; in fact, 12 U.S.C. §2615 expressly states

22  that nothing in RESPA shall affect the validity or enforceability of any loan or

23  mortgage. There simply is no private right of action for the alleged failure to

24  provide a good faith estimate. *Collins v. FMHA-USDA* 105 F.3d 1366 (11th Cir.

25  1997).

26      Whatever statutes plaintiffs might possibly be relying upon, they clearly

27  never will be able to truthfully assert that they did not receive any of the

28  documents required by the various consumer protection statutes. While of course

1    it is generally true when ruling upon a motion to dismiss under Rule 12(b)(6) that

2    (a) the allegations of the complaint must be taken as true, and (b) matters outside

3    the pleadings may not be considered, there are two relevant exceptions to these

4    principles.  First, the court may consider matters which are the proper subject of

5    judicial notice and need not accept as true assertions in the complaint which are

6    contradicted by such matters.  *Mullis v. United States Bank. Ct.* 828 F.2d 1385,

7    1388 (9th Cir. 1987).  Second, the court may consider documents which, although

8    not attached as an exhibit to the complaint, are "integral" or "central" to the

9    claims being made.  *Branch v. Tunnell* 14 F.3d 449, 454 (9th Cir. 1994)

10   (overruled on other grounds in *Galbraith v. County of Santa Clara* 307 F.3d 1119,

11   1127 (9th Cir. 2002).  This prevents a plaintiff with a legally deficient claim from

12   defeating a Rule 12(b)(6) motion "simply by failing to attach a dispositive

13   document on which it relied".  *Pension Benefit Guaranty Corp. v. White*

14   *Consolidated Industries, Inc.* 998 F.2d 1192, 1196 (3rd Cir. 1993).

15         In this action, the entire case against World is based upon a claim that

16   various required disclosures were not made.  Plaintiffs claim that they did not

17   receive notice of their right to rescind within three days, but this claim is squarely

18   refuted by the two "Notices of Right to Cancel – Refinancing", signed by each

19   plaintiff, attached  as Exhibits 1 and 2 to the accompanying Declaration of

20   Michael Goldberg.  Exhibit 3 to Mr. Goldberg's Declaration, an Acknowledgment

21   Letter, again signed by both plaintiffs, acknowledges receipt of (1) the statement

22   required by the Truth in Lending Act ("TILA") and (2) the good faith estimate of

23   closing costs.  Plaintiffs claim they did not receive an estimate of closing costs,

24   but the Exhibit 4 to Mr. Goldberg's Declaration, which accompanied Exhibit 3,

25   shows that claim is not true.  Exhibit 5 to that Declaration, which is also signed by

26   both plaintiffs, contains an explanation of the TILA disclosures, and Exhibit 6,

27   once again signed by both plaintiffs, is the required TILA disclosure itself.  Per

28   Exhibit 7 to Mr. Goldberg's Declaration, plaintiffs acknowledge receipt of the

1    Prepayment Feature Acknowledgment.  Exhibit 8 to that Declaration reflects the

2    fact that plaintiffs chose to have a monthly payment of $999.58, and Exhibit 9,

3    which is the Deferred Interest Acknowledgment, shows that plaintiffs understood

4    that by choosing a minimum payment, negative amortization would occur.

5         All the documents referenced in the preceding paragraph were executed

6    during the time period May 6-9, 2006, inclusive, and certainly no forgery or other

7    reason to suspect the documents are anything but genuine appears from the face

8    thereof.  Whatever may or may not have been the situation with the other three

9    loans referred to in the SAC, it is abundantly clear that plaintiffs knew and

10   understood exactly what they were getting with the World loan.

11   10.  THE SEVENTH CAUSE OF ACTION FAILS BECAUSE THERE WAS NO

12              AGENCY RELATIONSHIP WITH WORLD

13        Plaintiffs next attempt to hold World liable for fraud based on the conduct

14   of defendants Smith and Twomey (SAC ¶83).  They claim that these defendants

15   were "the designated agents" of World Savings and the other lenders.  Yet, their

16   own complaint belies this contention.

17        Plaintiffs' attempt to portray the Brokers as agents of World is done in the

18   most conclusory manner.  Plaintiffs merely allege that World appointed Smith and

19   Twomey "as their agents to perform required duties to plaintiffs as borrowers and

20   principals".  (SAC ¶7).  The conclusory allegation that these individuals were

21   "designated" as World's agents is made repeatedly in the SAC (SAC ¶¶72, 83).

22   There are no facts pleaded anywhere in the SAC to support the conclusion that the

23   Brokers were the agents of World.

24        While plaintiffs' conclusory pleading might otherwise be permissible, it is

25   not when the specific facts pleaded contradict their conclusions.  *Weisbuch. id.*

26   *Hosp.*, 159 F.3d 186, 192 (4th Cir. 1998).  Plaintiffs' exposition of facts

27   undermines their conclusion that the Brokers were agents of World.  Plaintiffs'

28   factual allegations conclusively establish that the Brokers were agents of

1  plaintiffs, not World.  The following examples (each of which are incorporated

2  into this cause of action) prove the point:

3  • Singh "offered to obtain a new loan on plaintiffs' home" (SAC ¶8);

4  • Plaintiffs "agreed to Mr. Singh's suggestion and *hired him to arrange*

5    *a new loan* at a fixed interest rate" (SAC ¶8) (emphasis added);

6  • Singh "negotiated a new loan with [not "for"] World Savings" (SAC

7    ¶10);

8  • "Plaintiffs paid a total commission to Mortgage Net the sum of

9    $11,390" (SAC ¶12);

10  • Plaintiffs "relied on their belief that Mr. Singh, their real estate agent

11    as he represented himself to be, was looking out for their best

12    interests . . ." (SAC ¶18);

13  • Smith, Singh and Twomey knew that the loan applications they

14    drafted and submitted "on behalf of plaintiffs" were false (SAC ¶28);

15  • Smith, Singh and Twomey "accepted the responsibility to act as

16    plaintiffs' agents to negotiate and procure a series of secured loans.

17    As plaintiffs' agents, defendants, and each of them are bound to the

18    duties of a fiduciary to his principal.  Defendants, as fiduciaries owed

19    plaintiffs undivided service and loyalty" (SAC ¶64).

20  These allegations destroy plaintiffs' inconsistent conclusion that the Brokers were

21  the agents of World.  They were plain and simply the agents of plaintiffs.

22      Plaintiffs are bound by their factual allegations and are now "out of luck" in

23  their attempt to make World liable on an agency theory.  *See Jefferson v.*

24  *Ambrose*, 90 F.3d 1291, 1296 (7th Cir. 1996) (explaining that although notice

25  pleading does not require a plaintiff to plead particulars, "if a plaintiff chooses to

26  [do so], and they show that he has no claim, then he is out of luck").  The lack of

27  an agency relationship is fatal to plaintiffs' seventh cause of action.  To the extent

28  plaintiffs are also relying on agency to support their fifth cause of action for gross

1  negligence, or their sixth cause of action for rescission, these claims must fail as
2  well.

3  Plaintiffs are bound by the factual allegations and they may not amend to
4  allege facts contradicting their admissions that the Brokers were their agents, not
5  World's agents. *See Ellington v. Burlington Northern, Inc.*, 652 F.2d 1327, 1329-
6  30 (9th Cir. 1981) (court should strike as a sham any pleading that contradicts
7  harmful factual allegations in earlier pleading). Thus, these causes of action
8  should be dismissed with prejudice and leave to amend should be denied.

9  11.    THE NINTH CAUSE OF ACTION FOR AN ACCOUNTING DOES NOT
10             STATE A VALID CLAIM AGAINST WORLD

11  This cause of action incorporates by reference some earlier paragraphs of
12  the SAC which might refer to World. However, it appears to in reality be only
13  directed at another lender; World therefore would simply repeat the arguments
14  relevant to the seventh cause of action regarding agency.

15                          12.  CONCLUSION

16  The Second Amended Complaint should be dismissed with prejudice as
17  against World because it does not set forth facts upon which relief may be
18  granted, and there is no reasonable possibility of an amendment to cure its
19  deficiencies.

20
21                                            Respectfully submitted,
22
       Dated:  March 27, 2008                 ANGLIN, FLEWELLING, RASMUSSEN,
23                                            CAMPBELL & TRYTTEN LLP
24
25                                            By:_____
26                                                 Christopher A. Carr
                                                   ccarr@afrct.com
27                                            Attorneys for Defendant WORLD
                                              SAVINGS BANK, FSB, renamed and now
28                                            known as WACHOVIA MORTGAGE
                                              FSB

**PROOF OF SERVICE**

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF LOS ANGELES  )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101.

On March 27, 2008, I served the following document(s) described as **DEFENDANT WORLD SAVINGS BANK, FSB's NOTICE OF MOTION AND MOTION TO DISMISS [FRCP 12(b)(6)]** on the interested parties in this action by placing __ the original _X_ a true and correct copy in an enclosed sealed envelope as follows:

Linda L. Mallette, Esq.                    Paul J. Smoot, Esq.
LAW OFFICES OF MALLETTE & LIBONATI         ANDERLINI, FINKELSTEIN,
2046 Fairmont Drive                        EMERICK & SMOOT
San Mateo, CA 94402                        400 South El Camino Real, Suite 700
                                           San Mateo, CA 94402

[X]    (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence by mailing. Under that same practice it would be deposited with U.S. Postal Service on that same day with postage fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[  ]   (BY TELECOPIER) By stipulation, I caused such document to be delivered by telecopy transmission to the offices of the addressee.

[  ]   (BY PERSONAL DELIVERY) I delivered such envelope by hand to the addressee.

[  ]   (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]    (FEDERAL) I declare that I am employed in the offices of a member of this Court at whose direction the service was made.

Executed on March 27, 2008, at Pasadena, California.


Jill Ashley                                _____
(Print or Type Name)                       (Signature of Declarant)

**PROOF OF SERVICE**

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF LOS ANGELES        )

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101.

     On March 27, 2008, I served the following document(s) described as **DEFENDANT WORLD SAVINGS BANK, FSB's NOTICE OF MOTION AND MOTION TO DISMISS [FRCP 12(b)(6)]** on the interested parties in this action by placing __ the original _X_ a true and correct copy in an enclosed sealed envelope as follows:

Linda L. Mallette, Esq.                    Paul J. Smoot, Esq.
LAW OFFICES OF MALLETTE & LIBONATI         ANDERLINI, FINKELSTEIN,
2046 Fairmont Drive                        EMERICK & SMOOT
San Mateo, CA 94402                        400 South El Camino Real, Suite 700
                                           San Mateo, CA 94402

[X]  (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence by mailing. Under that same practice it would be deposited with U.S. Postal Service on that same day with postage fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]  (BY TELECOPIER) By stipulation, I caused such document to be delivered by telecopy transmission to the offices of the addressee.

[ ]  (BY PERSONAL DELIVERY) I delivered such envelope by hand to the addressee.

[ ]  (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]  (FEDERAL) I declare that I am employed in the offices of a member of this Court at whose direction the service was made.

     Executed on March 27, 2008, at Pasadena, California.


_____Jill Ashley_____          _____
(Print or Type Name)                        (Signature of Declarant)

1  Mark T. Flewelling (#96465)
   mflewelling@afrct.com
2  Christopher A. Carr (#44444)
   ccarr@afrct.com
3  ANGLIN, FLEWELLING, RASMUSSEN
     CAMPBELL & TRYTTEN, LLP
4  199 South Los Robles Avenue, Suite 600
   Pasadena, CA  91101-2459
5  (626) 535-1900
   (626) 577-7764 (Facsimile)
6
   Attorneys for Defendant WORLD SAVINGS
7  BANK, FSB, renamed and now known as
   WACHOVIA MORTGAGE, FSB
8
9               UNITED STATES DISTRICT COURT

10   NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO BRANCH

11
   DAYA NAND and SHRI MATI,          )  Case No. C-08-01529-SI
12                                    )
             Plaintiffs,             )
13                                    )
        vs.                          )  DECLARATION OF MICHAEL
14                                    )  GOLDBERG IN SUPPORT OF
   SCOTT RICHARD SMITH, dba          )  WORLD SAVINGS BANK's
15   MORTGAGENET 2000; JEFFREY       )  MOTION TO DISMISS and
   JAMES TWOMEY, an individual;      )  MOTION TO STRIKE
16   ANGAD SINGH, an individual;     )
   GREENPOINT MORTGAGE              )
17   FUNDING, INC.; WORLD SAVINGS,   )  Date:  May 9, 2008
   aka WACHOVIA; GMAC MORTGAGE      )  Time:  9:00 A.M.
18   CORPORATION; and DOES FOUR      )  Courtroom:  10
   through TWENTY, inclusive,        )
19                                    )
             Defendants.             )
20  _____)

21  I, Michael Goldberg, declare:

22        1.  I am Vice President – Assistant General Counsel of Wachovia

23  Corporation, parent company of defendant World Savings Bank, FSB, which is

24  renamed and now known as Wachovia Mortgage, FSB (hereinafter, "World").  I

25  make this declaration in support of World's Motion to Dismiss and Motion to

26  Strike.  I have personal knowledge of the matters set forth herein, and if called as

27  a witness, I could and would testify correctly and competently as to the truth of all

28  said matters.

1    2.  In my job capacity, I reviewed the allegations of the Second Amended

2  Complaint.  I thereupon reviewed the loan file maintained by World in the

3  ordinary course of business with regard to the loan to plaintiffs which is alleged in

4  said Second Amended Complaint.

5    3.  Attached hereto as Exhibits 1 through 9, inclusive, are true and correct

6  copies of various documents contained within said loan file.

7

8    I declare under penalty of perjury under the laws of California the foregoing is

9  true and correct.

10

11  DATED:  March 26, 2008, at San Antonio, Texas.

12

13    MICHAEL GOLDBERG

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

0042880575

| WORLD SAVINGS | NOTICE OF RIGHT TO CANCEL - REFINANCING |
|---|---|
| | (LENDER CURRENTLY HAS A LOAN ON THE PROPERTY) |

## A. YOUR RIGHT TO CANCEL

You are entering into a new transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction. You have a legal right under federal law to cancel this new transaction, without cost, within three business days from whichever of the following events occurs last.

(1) the date of this new transaction, which is **May 8, 2006**, or  *May 9, 2006* 

(2) the date you received your new Truth-in-Lending disclosures, or

(3) the date you received this notice of your right to cancel

If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure the increase of credit. We must also return any money you have given to us or to anyone else in connection with this new transaction.

You may keep any money we have given you in this new transaction until we have done the things mentioned above, but you must then offer to return the money at the address below. If we do not take possession of the money within 20 calendar days of your offer, you may keep it without further obligation.

Any owner of your home has the right to cancel this new transaction. If one owner cancels the transaction, cancellation is effective for all owners

## B. HOW TO CANCEL

If you decide to cancel this new transaction, you may do so by notifying us in writing at: **WORLD SAVINGS, FINAL DOCUMENTATION, ATTN: OPERATIONS SUPPORT DEPARTMENT, 4101 WISEMAN BOULEVARD, BUILDING #307, SAN ANTONIO, TEXAS 78251, FAX NUMBER (210) 509-1293.** (No other office or representative of World Savings is authorized to accept your written notice to cancel )

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights

If you cancel by mail or telegram (or fax), you must send the notice to the above location no later than midnight of May 11, 2006 (midnight of the third business day following the latest of the three events listed above in Section A). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time

## C. CANCELLING THIS TRANSACTION

**I WISH TO CANCEL** (DO NOT SIGN HERE UNLESS YOU WISH TO CANCEL)

Consumer's Signature _____   Date _____

Please contact the Closing Agent if you decide to cancel

---

### ACKNOWLEDGEMENT OF RECEIPT OF COPIES

**BY MY SIGNATURE WHICH FOLLOWS, I acknowledge that I received two copies of this Notice of Right to Cancel to keep (plus one to sign and return to World)**

Consumer's Signature  *Nand*              Date  5-6-06
                      DAYA NAND

Property Address    27324 CAPRI AVE
                    HAYWARD, CA  94545-3308

Please return a signed copy of this Notice of Right to Cancel to the address shown above. Keep the other two copies

---

SD333 (2004-03-3)
DISTRIBUTION       1 COPY-RETURN SIGNED TO LENDER      2 COPIES-BORROWER      CA      1 COPY-FILE

LENDER'S USE ONLY

0 2 4

**Page 4**

EXHIBIT 2

0042880575

| **WORLD SAVINGS** | **NOTICE OF RIGHT TO CANCEL - REFINANCING**<br>(LENDER CURRENTLY HAS A LOAN ON THE PROPERTY) |
|---|---|

## A. YOUR RIGHT TO CANCEL

You are entering into a new transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction. You have a legal right under federal law to cancel this new transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of this new transaction, which is May 8, 2006, or    *May 9, 2006*    (Initial SM)

(2) the date you received your new Truth-in-Lending disclosures, or

(3) the date you received this notice of your right to cancel

If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure the increase of credit. We must also return any money you have given to us or to anyone else in connection with this new transaction.

You may keep any money we have given you in this new transaction until we have done the things mentioned above, but you must then offer to return the money at the address below. If we do not take possession of the money within 20 calendar days of your offer, you may keep it without further obligation.

Any owner of your home has the right to cancel this new transaction. If one owner cancels the transaction, cancellation is effective for all owners.

## B. HOW TO CANCEL

If you decide to cancel this new transaction, you may do so by notifying us in writing at **WORLD SAVINGS, FINAL DOCUMENTATION, ATTN: OPERATIONS SUPPORT DEPARTMENT, 4101 WISEMAN BOULEVARD, BUILDING #307, SAN ANTONIO, TEXAS 78251, FAX NUMBER (210) 509-1293.** (No other office or representative of World Savings is authorized to accept your written notice to cancel.)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram (or fax), you must send the notice to the above location no later than midnight of May 12, 2006 (or midnight of the third business day following the latest of the three events listed above in Section A). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

## C. CANCELLING THIS TRANSACTION

**I WISH TO CANCEL** (DO NOT SIGN HERE UNLESS YOU WISH TO CANCEL)    (Initial SM)

Consumer's Signature _____    Date _____

Please contact the Closing Agent if you decide to cancel.

---

### ACKNOWLEDGEMENT OF RECEIPT OF COPIES

**BY MY SIGNATURE WHICH FOLLOWS, I** acknowledge that I received two copies of this Notice of Right to Cancel to keep (plus one to sign and return to World)

Consumer's Signature ___*[signature]*___    Date *05/09/06*  SM

    SHRI MATI

Property Address    27324 CAPRI AVE<br>    HAYWARD, CA  94545-3308

Please return a signed copy of this Notice of Right to Cancel to the address shown above. Keep the other two copies.

---

SD333 (2004-03-3)

DISTRIBUTION    1 COPY-RETURN SIGNED TO LENDER    2 COPIES-BORROWER    CA<br>1 COPY-FILE

LENDER'S USE ONLY

0 2 4

**Page 6**

EXHIBIT 3

| WORLD SAVINGS | ACKNOWLEDGEMENT LETTER |
|---|---|

Property Address
27324 CAPRI AVE
HAYWARD, CA  94545-3308

DAYA NAND
27324 CAPRI AVENUE
HAYWARD, CA  94545

Loan No  0042880575
Date  05/08/06

Dear Loan Applicant

Thank you for your home loan application  We sincerely appreciate your business

At various times during the processing of your loan application, we will provide disclosures and booklets  These are designed to help you fully understand the features and benefits of our overall lending programs and the specific loan you have requested

Enclosed with this letter are the following items

- TRUTH-IN-LENDING STATEMENT - required by Federal Regulation Z (Truth-In-Lending)  This disclosure includes the Annual Percentage Rate (APR), the amount financed and the total of payments

- GOOD FAITH ESTIMATE - required by the Real Estate Settlement Procedure Act (RESPA)  This disclosure lists estimated closing costs

- SETTLEMENT COSTS: A HOUSING AND URBAN DEVELOPMENT (HUD) GUIDE FOR HOME BUYERS - required by RESPA  This booklet describes closing procedures and explains how to read the Good Faith Estimate

You may also have received the following with this letter or in your application package

- MORTGAGE SERVICING TRANSFER DISCLOSURE - required by RESPA  This discloses the likelihood of our transferring the servicing of your loan to another party

- LOAN PROGRAM DISCLOSURE(S) FOR THE ADJUSTABLE RATE MORTGAGE LOAN(S) IN WHICH YOU WERE INTERESTED - required by the Federal Regulation Z (Truth-In-Lending) and Office of Thrift Supervision regulations  This disclosure explains the loan you have requested  (If you have decided on a loan program which is different from the one(s) for which you have already received a disclosure, we will issue a substitute loan program disclosure )

- CONSUMER HANDBOOK ON ADJUSTABLE RATE MORTGAGES - required by Office of Thrift Supervision regulations  This booklet describes how adjustable rate mortgage loans work

- REFERRAL NOTICE - required by RESPA

- PROTECTING YOUR PRIVACY BROCHURE - required by the Gramm-Leach-Bliley Act

Please sign and return the originals of the following items:

- TRUTH-IN-LENDING STATEMENT (Any loan applicant may sign this disclosure.)

- LOAN PROGRAM DISCLOSURE (Provided only for Adjustable Rate Mortgages.  Any loan applicant may sign this disclosure.)

- MORTGAGE SERVICING TRANSFER DISCLOSURE (Please be sure that all loan applicants sign this disclosure.)

- REFERRAL NOTICE (Any loan applicant may sign this notice.)

IMPORTANT NOTICE: To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account  What this means for you  When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you  We may also ask to see your driver's license or other identifying documents

APPRAISAL: An appraiser will contact the seller's representative, or you if this is a refinance loan, to schedule an appointment  Contact your Loan Representative with any questions you have  We are committed to providing you with the best possible customer service

**Please acknowledge your receipt of the items listed above by signing and returning one copy of this letter to us. Please retain the other copy for your records.**

ACKNOWLEDGEMENT
Any Loan Applicant May Sign

_____  x _____
LOAN APPLICANT'S SIGNATURE

05/09/06
_____
DATE

Customer Contact    MORTGAGE NET, THE

Telephone Number   (408) 779-9199

GF018A1 (2004-03-2)                                                                          CA
DISTRIBUTION   1 COPY-RETURN SIGNED TO LENDER   1 COPY-LOAN APPLICANT   2 COPIES-FILE

0 6 3

LENDER'S USE ONLY

**Page 6**

# EXHIBIT 4

| WORLD SAVINGS | GOOD FAITH ESTIMATE OF SETTLEMENT COSTS |
|---|---|
| | (THIS IS NOT A COMMITMENT TO LEND) |

BORROWER: DAYA NAND, ET AL.                                                           DATE: 05/05/06

LOAN AMOUNT APPLIED FOR: $ 276,000.00                          LOAN NUMBER: 0042880575

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed.

The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A settlement statement that you will be receiving at settlement. The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement.

| | | | | |
|---|---|---|---|---|
| * # | 801 | LOAN ORIGINATION FEE PAID BY BORROWER | .00 | |
| * # | 801.2 | BUYDOWN FEE PAID BY BORROWER | .00 | |
| # | 801.4 | TAKE-OUT COMMITMENT FEE | .00 | |
| * # | 802 | LOAN DISCOUNT FEE PAID BY BORROWER | .00 | |
| * # | 802.1 | SALEABLE LOAN DISCOUNT FEE | .00 | |
| * | 803 | APPRAISAL/PROPERTY EVALUATION FEE (Property Inspection Waiver Fee may be substituted) | 325.00 | |
| * | 803.2 | APPRAISAL REVIEW FEE | .00 | |
| | 804 | CREDIT REPORT FEE PAID BY LENDER | 7.30 | POC/L |
| # | 807 | ASSUMPTION FEE | .00 | |
| * # | 808 | TAX SERVICE FEE | 30.50 | |
| # | 809 | STANDARD PROCESSING FEE (Paid at time of Application) | .00 | |
| * # | 809 | STANDARD PROCESSING FEE (Paid at loan Closing) | 307.00 | |
| # | 809.1 | MORTGAGE CREDIT CERTIFICATE (MCC) FEE | .00 | |
| * # | 809.2 | EQUITY BUILDER SERVICING FEE | .00 | |
| # | 810 | APPLICATION FEE (Paid at time of Application) | .00 | |
| * # | 810 | APPLICATION FEE (Paid at loan Closing) | 0.00 | |
| * # | 810.1 | FANNIE MAE AUTOMATED UNDERWRITING FEE | .00 | |
| | 810.2 | EMPLOYMENT VERIFICATION FEE | .00 | |
| # | 811 | TRUST REVIEW FEE | .00 | |
| * # | 812 | MORTGAGE BROKER FEE PAID BY BORROWER AT CLOSING | 3,110.00 | |
| | 812.1 | MISC BROKER FEES PAID BY BORROWER OUTSIDE CLOSING | .00 | |
| | 812.2 | MORTGAGE BROKER FEE PAID BY LENDER | 8,280.00 | POC/L |
| | 812.3 | MORTGAGE BROKER FEE PAID BY LENDER TO WORLD MORTGAGE COMPANY | | |
| * | 813 | INITIAL FLOOD ZONE DETERMINATION FEE | 3.00 | |
| | 814 | ONGOING FLOOD ZONE MONITORING FEE | .00 | |
| * # | 815 | FUNDING FEE | 50.00 | |
| * # | 816 | RATE LOCK-IN FEE | .00 | |
| * # | 817 | COMMITMENT FEE | .00 | |
| * | 818 | DOCUMENT PREPARATION FEE | 50.00 | |
| | 819 | LOAN SUBMISSION FEE PAID BY LENDER | .00 | |
| | 820 | ELECTRONIC FACILITY FEE PAID BY LENDER | .00 | |
| * # | 821 | LOAN SALES PROCESSING FEE | .00 | |
| * # | 901 | INTEREST: PREPAID INTEREST PAID AT CLOSING (Estimate based on maximum amount which may be collected.) 22 DAYS @ 7.110% | 1,182.72 | |
| * # | 902 | MORTGAGE INSURANCE PREMIUM | .00 | |
| | 903 | HAZARD INSURANCE PREMIUM | .00 | |
| * | 1001 | HAZARD INSURANCE RESERVE DEPOSIT | .00 | |
| * # | 1002 | MORTGAGE INSURANCE RESERVE DEPOSIT | .00 | |
| * | 1003 | PROPERTY TAX RESERVE DEPOSIT | .00 | |
| # | 1101 | SETTLEMENT FEE | 100.00 | |
| | 1102 | ABSTRACT OR TITLE SEARCH FEE | .00 | |
| | 1103 | TITLE EXAMINATION FEE | .00 | |
| | 1106 | NOTARY FEES | 75.00 | |
| | 1107 | ATTORNEYS' FEES | .00 | |
| | 1108 | TITLE INSURANCE PREMIUM | 1,000.00 | |
| | 1111 | TAX CERTIFICATE FEE | .00 | |
| # | 1112 | CLOSING PROTECTION LETTER (PA) | .00 | |
| | 1201 | RECORDING FEE | 85.00 | |
| | 1202 | CITY/COUNTY TAX/STAMPS/OTHER GOVERNMENT TRANSFER CHARGES | .00 | |
| | 1203 | STATE TAX/STAMPS | .00 | |
| | 1204 | INTANGIBLE PROPERTY/RECORDING/MORTGAGE TAX | .00 | |
| | 1301 | IMPROVEMENT LOCATION CERTIFICATE/SURVEY/PLOT PLAN FEE | .00 | |
| | 1302 | PEST INSPECTION FEE | .00 | |
| # | 1303 | COURIER FEE | .00 | |
| # | 1304 | WIRE FEE | .00 | |
| # | 1305 | ESTIMATED MISCELLANEOUS CLOSING AGENT CHARGES | 200.00 | |
| # | 1306 | LOAN TIE-IN FEE | .00 | |
| | | TOTAL ESTIMATED BORROWER PAID SETTLEMENT COSTS | 6,718.22 | |

* TO BE DEDUCTED FROM THE LOAN FUNDS / # INCLUDED IN CALCULATION OF ANNUAL PERCENTAGE RATE (APR)

"POC/L" NEXT TO AN ITEM DESIGNATES A COST PAID BY LENDER OUTSIDE OF CLOSING (NOT INCLUDED IN TOTAL BORROWER PAID COSTS)

"PC/L" NEXT TO AN ITEM DESIGNATES A COST PAID BY LENDER AT CLOSING (NOT INCLUDED IN TOTAL BORROWER PAID COSTS)



064

LENDER'S USE ONLY

**Page 8**

| WORLD SAVINGS | GOOD FAITH ESTIMATE OF SETTLEMENT COSTS - CONTINUED (THIS IS NOT A COMMITMENT TO LEND) | LN. NO.: 0042880575 |
|---|---|---|

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the Lender will take a first lien on the property.

This form does not cover all items you may be required to pay in cash at settlement, for example, flood insurance premiums or a reserve deposit for flood insurance premiums.

**FOR INFORMATION ABOUT TAX CONSEQUENCES OF CLOSING YOUR LOAN, PLEASE CONSULT YOUR TAX ADVISOR.**

Pursuant to RESPA if a lender requires the use of a particular provider of a settlement service for which the borrower pays any cost, then lender must give the name, address and telephone number of such providers. Listed below are the service providers World Savings has regularly required borrowers to use during the last 12 months. The estimates of costs (if any) shown on the corresponding line number on page 1 are based upon charges normally billed by these service providers.

- 803 - If applicable, appraisal services may be provided by either World Savings appraisers or independent contractors.

  Fannie Mae may waive a property inspection for which the fee is substantially less. Fees for inspection waivers will be paid to Fannie Mae; World Savings has an ongoing relationship with Fannie Mae.

  **Fannie Mae**
  3900 Wisconsin Avenue NW
  Washington, DC 20016-2892
  202-752-7000

- 804 - Credit Report Fee Paid by Lender

  **CBC Companies, Inc.**
  520 E. Main Street
  Carnegie, PA 15106
  800-925-0298

  **Trans Union Corporation**
  760 Sproul Road
  Springfield, PA 19064-0390
  800-632-1765

  **Equifax Information Service**
  5505 Peachtree Dunwoody Rd 600
  Atlanta, GA 30374-0241
  800-685-1111

  **Experian Consumer Center**
  701 Experian Pkwy - P.O. Box 2002
  Allen, TX 75013-2002
  888-397-3742

- 808 - Tax Service will be provided by:

  **First American Real Estate Tax Services**
  8435 North Stemmons Freeway
  Dallas, TX 75247
  800-229-8426

- 810.1 - If there is a Fannie Mae Automated Underwriting Fee this service will be provided by:

  **Fannie Mae**
  3900 Wisconsin Avenue NW
  Washington, DC 20016-2892
  202-752-7000

- 810.2 - If there is a Employment Verification Fee this service will be provided by:

  **The Work Number**
  1850 Borman Court
  St. Louis, MO 63146
  800-996-7566

- 813 and 814 - If there are estimates for Initial Flood Zone Determination Fee and Ongoing Flood Zone Monitoring Fee, these services will be provided by:

  **First American Flood Data Services**
  11902 Burnet Road
  Austin, TX 78758
  512-834-9595

- 902 - If there is an estimate for mortgage insurance premium, this service may be provided by one of the following companies:

  **Radian Guaranty Inc.**
  400 Market Street, 2nd Floor
  Philadelphia, PA 19106
  877-723-4261

  **AIG United Guaranty Insurance**
  230 N. Elm Street
  Greensboro, NC 27420
  888-822-5584

  **PMI Mortgage Insurance Company**
  3003 Oak Road
  Walnut Creek, CA 94597
  800-366-1143

  **Republic Mortgage Insurance Company**
  190 Oak Plaza Blvd.
  Winston-Salem, NC 27105
  800-884-7642

| WORLD SAVINGS | GOOD FAITH ESTIMATE OF SETTLEMENT COSTS - CONTINUED<br>(THIS IS NOT A COMMITMENT TO LEND) | LN. NO.: 0042880575 |
|---|---|---|

- 1206 - If applicable, homebuyer counseling services may be provided by one of the following non-profit organizations:

ACORN Housing Corporation, Inc.
650 S. Clark Street, Suite 301
Chicago, IL 60605
312-939-1611

ACORN Housing Corporation, Inc.
1018 West Roosevelt Avenue
Phoenix, AZ 85007
602-253-1111

Housing Partnership, Inc.
2001 Blue Heron Blvd.
Riviera Beach, FL 33404
561-841-3500

Neighborhood Housing Services of Southern Nevada, Inc.
1849 Civic Center Drive
North Las Vegas, NV 89030
702-649-0998

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

NOTE REGARDING LINE 812.2 ON PAGE 1 ("MORTGAGE BROKER FEE PAID BY LENDER")

NOTE:   THE LOAN YOU HAVE APPLIED FOR INCLUDES A "MORTGAGE BROKER FEE PAID BY LENDER," WHICH APPEARS ON LINE 812.2 ON PAGE 1.   IN RETURN FOR THE SERVICES THEY PROVIDE, MORTGAGE BROKERS RECEIVE COMPENSATION (FEES) FROM BORROWERS DIRECTLY OR FROM LENDERS (MORTGAGE BROKER FEE PAID BY LENDER) OR FROM BOTH.   USUALLY, IF THE LENDER PAYS A FEE TO A MORTGAGE BROKER, THE BORROWER PAYS LOWER DIRECT FEES TO THE MORTGAGE BROKER AND IN RETURN FOR THIS LOWER UP-FRONT COST, PAYS A HIGHER INTEREST RATE ON THE LOAN.   CONVERSELY, IT IS OFTEN POSSIBLE FOR BORROWERS TO PAY HIGHER UP-FRONT COSTS IN RETURN FOR A LOWER INTEREST RATE ON THE LOAN. BE SURE TO ASK YOUR MORTGAGE BROKER TO EXPLAIN THE VARIOUS OPTIONS THAT ARE AVAILABLE TO YOU.

SPACE INTENTIONALLY LEFT BLANK

# EXHIBIT 5

0042880575

# LOAN PROGRAM DISCLOSURE

## PICK-A-PAYMENT[sm] LOAN

### ADJUSTABLE RATE MORTGAGE
### GDW AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX (COSI)

This disclosure describes in a question-and-answer format important features of the Pick-a-Payment[sm] Loan Program you are considering Federal Reserve Regulation Z and the rules and regulations of the federal Office of Thrift Supervision require that World give this disclosure to you This disclosure is accurate as of the date of printing However, World reserves the right to make subsequent changes to it at any time regarding any matter it covers Such changes may occur because of changes in policy, law or regulation or for any other reason Some terms of loans on non-owner occupied properties may be different from those described in this disclosure If you are considering a loan on a non-owner occupied property, please ask a Loan Representative about the differences

**CAN THE INTEREST RATE AND PAYMENT AMOUNT CHANGE?**
Yes Movement of an index causes the interest rate and payment amount to change An index is an independent measure of interest rate activity

**WHAT IS THE INDEX?**
The index for this loan is the weighted average of the rates of interest on the deposit accounts (sometimes called **cost of savings**) of the federally insured depository institution subsidiaries of Golden West Financial Corporation ("COSI" or "Index") Golden West Financial Corporation is a holding company listed on the New York Stock Exchange under the trading symbol "GDW" All of the depository institution subsidiaries of GDW currently operate under the name World Savings

The COSI consists of the weighted annualized rate of interest in effect on deposit accounts, adjusted for the effects of financial instruments related to deposit accounts and other adjustments determined by GDW in its sole discretion as appropriate to accurately reflect the weighted average of interest rates on the deposit accounts It does not include accounts owned by GDW or its subsidiaries

GDW computes the COSI as of the last day of each calendar month and announces it on or near the last business day prior to the fifteenth day of the following calendar month For example, GDW announces the February COSI on or near the last business day prior to the fifteenth of March It is in effect until the announcement of the March COSI in April

**WHERE CAN I GET INFORMATION ABOUT THE INDEX?**
You can get information about the COSI by

– writing to World Savings
  P O Box 659558
  San Antonio, Texas 78265-9558
  Attn Customer Service Department, or

– telephoning (800) 642-0257

**HOW DOES WORLD DETERMINE INTEREST RATE CHANGES?**
World determines interest rate changes by adding an amount (margin) that is fixed for the life of the loan to the current Index The current Index is the most recently announced COSI value available on the date of each interest rate change. Please ask for World's current margin and interest rate

**HOW DOES WORLD DETERMINE PAYMENT CHANGES?**
Subject to the payment change limits described below, World determines payment changes by calculating payments that amortize the loan Amortize means to pay off the loan at its then current interest rate over its remaining term with equal payments

**IS THE INITIAL INTEREST RATE BASED ON THE INDEX PLUS THE MARGIN?**
Yes

**HOW IS THE INITIAL PAYMENT AMOUNT ESTABLISHED?**
You select an initial payment amount from a range of payment amounts provided by World The range includes a minimum and a maximum initial payment amount The maximum initial payment will not fully amortize the loan at the initial interest rate The initial payment amount you select may not be sufficient to pay the full amount of interest due at the initial interest rate This will cause the loan amount to increase as described below in the section "How Does The Principal Balance Change?" Please ask for the range of initial payments for the loan you are considering

**HOW OFTEN CAN THE INTEREST RATE CHANGE?**
Monthly, beginning on the due date of the first regularly scheduled payment

**HOW OFTEN CAN THE PAYMENT CHANGE?**
Annually The payment can change every 12 payments beginning with the 13th payment Each date on which the payment may change is a "Payment Change Date"

**ARE THERE ANY LIMITS TO THE AMOUNT THE INTEREST RATE MAY CHANGE?**
Yes The maximum interest rate limit ("Lifetime Rate Cap") is between 2 000 and 7 000 percentage points over the initial Index value plus margin Please ask for World's current Lifetime Rate Cap

**ARE THERE ANY LIMITS TO THE AMOUNT THAT PAYMENTS MAY CHANGE?**
Yes The monthly payment cannot increase ("Payment Cap") more than 7-1/2% each year
However,

– the Payment Cap does not apply on the 10th, 15th, 20th, 25th or final Payment Change Dates,

– the Payment Cap does not apply if the principal balance reaches the limits described in the answer to the next question

**HOW DOES THE PRINCIPAL BALANCE CHANGE?**
The principal balance (loan amount) can change monthly

When the monthly payment is more than sufficient to pay the full amount of interest due, World subtracts the amount that exceeds the interest due from the principal balance, resulting in a principal reduction

At various times during the life of your loan the monthly payment may not be sufficient to pay the full amount of interest due This can occur if the initial payment amount that you select is less than the full amount of interest due This can also result from increases in the interest rate prior to the Payment Change Date or from a monthly payment that did not increase sufficiently to pay the full amount of interest due, because of the 7-1/2% Payment Cap



0042880575

If the monthly payment is not sufficient to pay the full amount of interest due, World adds this accrued but unpaid interest, called Deferred Interest, to the unpaid principal balance of the loan *Until* repaid, Deferred Interest bears interest at the interest rate of the loan

The principal balance may never exceed:

- 125% of the original principal balance amount for a loan that had an original loan amount of 85% or less of the property's appraised value or sales price (whichever is less), or
- 115% of the original principal balance amount for a loan that had an original loan amount that is greater than 85% and less than or equal to 90% of the property's appraised value or sales price (whichever is less), or
- 110% of the original principal balance amount for a loan that had an original loan amount greater than 90% of the property's appraised value or sales price (whichever is less)

If Deferred Interest caused the principal balance to reach these limits, World would *immediately increase the payment without regard to the Payment Cap* The increased payment would pay off the loan at the then current interest rate and remaining term

**WHAT ARE THE INITIAL AND MAXIMUM INTEREST RATES AND PAYMENTS FOR A $10,000 LOAN ORIGINATED IN SEPTEMBER OF 2005?**

| | Initial payment selected * | Maximum payment and year in which maximum payment occurs ** | |
|---|---|---|---|
| **5 YEAR TERM** | | | |
| Minimum initial payment | $175 06 | $398 87 | 5th year |
| Maximum initial payment | $192 12 | $294 25 | 5th year |
| **15 YEAR TERM** | | | |
| Minimum initial payment | $64 13 | $182 49 | 5th year |
| Maximum initial payment | $82 98 | $206 51 | 11th year |
| **30 YEAR TERM** | | | |
| Minimum initial payment | $36 72 | $136 60 | 3rd year |
| Maximum initial payment | $58 29 | $137 81 | 5th year |

* The initial interest rate in the examples is 5 740%, which reflects an Index value of 2 890% plus a margin of 2 850% Your initial interest rate may be different

** The maximum interest rate in these examples is 12 740%, which reflects a Lifetime Rate Cap of 7 000% over the initial Index value plus margin Your Lifetime Rate Cap may be different

Your monthly payment can increase or decrease substantially based on changes in the interest rate

**HOW CAN I CALCULATE THE INITIAL PAYMENT FOR THE AMOUNT I PLAN TO BORROW?**

To see what the initial payments would be

step 1   divide the amount you plan to borrow by $10,000, and then

step 2   multiply the resulting amount by the monthly payment shown under the "Initial payment selected" column of the immediately previous question

For example,

for a **5 year term**, the monthly payment for a loan amount of $120,000 would be

step 1   $120,000 ÷ $10,000 = 12

step 2   12 X $175 06 = **$2,100.72** (minimum initial payment)
or
12 X $192 12 = **$2,305.44** (maximum initial payment)

for a **15 year term**, the monthly payment for a loan amount of $120,000 would be

step 1   $120,000 ÷ $10,000 = 12

step 2   12 X $64 13 = **$769.56** (minimum initial payment)
or
12 X $82 98 = **$995.76** (maximum initial payment)

for a **30 year term**, the monthly payment for a loan amount of $120,000 would be

step 1   $120,000 ÷ $10,000 = 12

step 2   12 X $36 72 = **$440.64** (minimum initial payment)
or
12 X $58 29 = **$699.48** (maximum initial payment)

**WHEN WILL I RECEIVE NOTICES OF CHANGES TO THE LOAN? WHAT INFORMATION WILL THEY INCLUDE?**

World sends a written notice at least 25 days before each Payment Change Date  The notice includes information about the payment amount, interest rate and loan balance changes

**DOES THIS LOAN HAVE AN ASSUMPTION/DUE-ON-SALE PROVISION?**

If at origination your loan is not secured by additional non-real estate collateral, World will give written approval for a transfer (assumption) and the buyer (transferee) may assume your loan at its current interest rate provided

1)   the buyer meets World's then current credit standards,

2)   the buyer makes a cash downpayment sufficient to meet World's then current underwriting standards,

3)   World receives an assumption fee,

4)   no previous transfer of the property has occurred since the original date of the loan, and

5)   you and the buyer sign all required assumption documents

The buyer might not receive the same Lifetime Rate Cap that you originally did. The buyer could receive a higher Lifetime Rate Cap based on then current market conditions

If the loan program you are considering requires additional non-real estate collateral at the time of origination, the loan will not be assumable  You will receive additional information that will explain the loan program in greater detail

Under certain circumstances, World could declare the entire outstanding loan amount immediately due and payable  Failure to pay could then *result in the forced sale of the property securing the loan*. This could occur

- if there is more than one sale or transfer of the property, or
- if you sell or transfer the property to anyone without obtaining World's prior written consent

**DOES THIS LOAN HAVE A PREPAYMENT CHARGE PROVISION?**

Some loan programs have a provision that requires that you pay a fee (a prepayment charge) if you make certain payments of principal before they are due (prepayments)  Be sure to ask whether the loan program you are considering has a prepayment charge provision

If the loan program you are considering does have a prepayment charge provision, you will receive several documents during the processing of your loan that explain the prepayment charge in detail

**HOW CAN I GET INFORMATION ABOUT WORLD'S OTHER LOAN PROGRAMS?**

A Loan Representative will be happy to answer any questions you have and provide you with disclosures for other adjustable rate loan programs

**IMPORTANT - SIGNATURE**

I have received a copy of this disclosure describing the Pick-a-Payment Loan Program  I understand that this disclosure is neither a commitment to make a loan nor a binding contract  The complete contractual terms and conditions of the loan are in the Note, Security Instrument, Modification(s) and Rider(s), if any

| Print Name | Property Address |
|---|---|
| _____ x _____ | 5-6-06 |
| Signature | Date |

**Please return a signed copy of this disclosure to World and retain a copy for your records.**

# EXHIBIT 6

| WORLD SAVINGS | FEDERAL TRUTH IN LENDING DISCLOSURE REQUIRED BY REGULATION Z |
| --- | --- |

Customer's Name
DAYA NAND, ET AL.

Date May 8, 2006
Loan No 0042880575

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
| --- | --- | --- | --- | --- |
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after you have made all payments as scheduled | The total price of your purchase on credit including your down payment of |
| | | | | Not Applicable |
| 7.222 % | $ 507,842.20 | $ 271,127.30 | $ 778,969.50 | Not Applicable |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due: MONTHLY beginning on |
| --- | --- | --- |
| 12 | $999.58 | 07/01/06 |
| 12 | 1,074.55 | 07/01/07 |
| 12 | 1,155.14 | 07/01/08 |
| 12 | 1,241.78 | 07/01/09 |
| 12 | 1,334.91 | 07/01/10 |
| 12 | 1,435.03 | 07/01/11 |
| 12 | 1,542.66 | 07/01/12 |
| 12 | 1,658.36 | 07/01/13 |
| 12 | 1,782.74 | 07/01/14 |
| 12 | 1,916.45 | 07/01/15 |
| 239 | 2,538.66 | 07/01/16 |
| 1 | 2,535.36 | 06/01/36 |

VARIABLE RATE: THIS LOAN CONTAINS AN ADJUSTABLE RATE FEATURE. SEE THE ADJUSTABLE LOAN PROGRAM DISCLOSURE STATEMENT PREVIOUSLY GIVEN TO YOU.

This loan DOES NOT HAVE A DEMAND FEATURE.

Insurance     You may obtain property insurance from anyone you want who is acceptable to the Lender

Security     You are giving a security interest in the real property located at 27324 CAPRI AVE, HAYWARD, CA  94545-3308

Filing Fees    $     85.00

Late Charge·  If a payment is late, you will be charged 5.00% of the payment

Prepayment   If you pay off the loan early, you MAY have to pay a penalty and you WILL NOT be entitled to a refund of ANY PART OF THE FINANCE CHARGE ALREADY PAID.

Assumption   SOMEONE BUYING YOUR HOUSE CAN ASSUME THE REMAINDER OF THE LOAN UNDER CERTAIN TERMS AND CONDITIONS. TERMS MAY BE DIFFERENT FROM YOUR ORIGINAL TERMS - SEE YOUR ADJUSTABLE LOAN PROGRAM DISCLOSURE STATEMENT.

Due on Sale  If the property securing the loan is sold or transferred to anyone without first obtaining Lender's written consent, all sums owed could become immediately due and payable  In this event failure to pay all the sums declared due and payable may result in the forced sale of the property

See your Contract documents for additional information about non-payment, default, any required repayment in full before the scheduled date and other important terms and conditions of your loan

By signing below, you acknowledge that you received a copy of this FEDERAL TRUTH IN LENDING DISCLOSURE

X _____    X _____       05/09/06
                                              Date

GF424A1 (2004-03-1)      UNIVERSAL                                                    CA·
FINAL         DISTRIBUTION    1 COPY-RETURN SIGNED TO LENDER    1 COPY-CUSTOMER    2 COPIES-FILE

LENDER'S USE ONLY

073

**Page 15**

EXHIBIT 7

| WORLD SAVINGS | PREPAYMENT FEATURE ACKNOWLEDGEMENT |
|---|---|

LOAN NUMBER· 0042880575

DATE: 05/08/06

LOAN PROGRAM: ADJUSTABLE RATE MORTGAGE
PICK-A-PAYMENT LOAN

BORROWER(S):
DAYA NAND
SHRI MATI

PROPERTY ADDRESS:
27324 CAPRI AVE
HAYWARD, CA 94545-3308

You have selected a loan program that includes a prepayment fee provision. The following is the prepayment fee provision that will appear in your loan documents·

I have the right to make payments of Principal at any time before they are due. A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so. The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing. I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal. During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

By signing below, I/we acknowledge and agree that:

1. As a federally chartered savings institution acting in accordance with the federal laws and regulations governing federally chartered savings institutions, WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND OR ASSIGNEES, has an enforceable legal right to the prepayment fee described above, even if there is a state or local law to the contrary.

2. The prepayment fee provision written above constitutes the entire prepayment fee provision that will appear in my/our Note and supersedes any other written or oral discussion to the contrary.

3. The fact that there is a prepayment fee provision is disclosed on the enclosed Truth-in-Lending Disclosure

4. I/We have been given an opportunity to discuss the prepayment fee provision with a Loan Representative and I/we fully understand it.

5. If I/we select a different loan program subsequent to the date of this Acknowledgement, World will provide a new Acknowledgement that will supersede this and other forms related to the above named loan program. This Acknowledgement supersedes any previous Acknowledgement given to me/us.

6. I/We have received a copy of this form.

SIGNATURE PAGE FOLLOWS

0042880575

| PREPAYMENT FEATURE ACKNOWLEDGEMENT - SIGNATURE PAGE |
|---|

BORROWER(S) SIGNATURE(S):

_____

DAYA NAND

_____

SHRI MATI

NOTE:
AT YOUR REQUEST AND SUBJECT TO THE FOLLOWING REQUIREMENTS, WORLD WILL WAIVE
OR REFUND THE PREPAYMENT FEE ON THIS LOAN IF A NEW FIRST MORTGAGE LOAN THAT
REPLACES THIS LOAN IS OBTAINED FROM WORLD.

THE AMOUNT OF THE NEW LOAN MUST BE AT LEAST EQUAL TO THE AMOUNT OF THIS
LOAN AT THE TIME OF ITS PREPAYMENT. ADDITIONALLY, THE NEW LOAN MUST HAVE AN
ADJUSTABLE INTEREST RATE, A PREPAYMENT FEE PROVISION THAT IS OF THE SAME OR
LONGER DURATION AS THIS LOAN AND A MARGIN* EQUAL TO OR GREATER THAN THE
MARGIN OF THIS LOAN; THE NEW LOAN MAY NOT HAVE A MODIFICATION PERIOD OF
MORE THAN 14 WEEKS AND MAY NOT INCLUDE A PAYMENT BY WORLD TO YOU, THE BUYER
OF THIS PROPERTY, A MORTGAGE BROKER,OR ANY OTHER THIRD PARTY. THE NEW LOAN
MUST BE SECURED BY PROPERTY THAT MEETS WORLD'S APPRAISAL STANDARDS AND IS
LOCATED WITHIN WORLD'S LENDING TERRITORY.
THE NEW LOAN MUST MEET WORLD'S THEN CURRENT UNDERWRITING CRITERIA.**

THERE ARE SEVERAL WAYS TO OBTAIN A NEW LOAN. THEY ARE:

- YOU OBTAIN A NEW FIRST MORTGAGE LOAN FROM WORLD ON THIS PROPERTY;
- YOU OBTAIN A NEW LOAN FROM WORLD ON A DIFFERENT PROPERTY AND THIS
  LOAN IS PAID IN FULL AT THE SAME TIME AS THE CLOSING OF THE NEW
  LOAN;
- YOU OBTAIN AND CLOSE A NEW LOAN FROM WORLD ON A DIFFERENT PROPERTY
  NO LATER THAN 180 DAYS AFTER THIS LOAN IS PAID IN FULL (IN THIS
  CASE WORLD WILL REFUND THE PREPAYMENT FEE UPON YOUR WRITTEN
  REQUEST); OR
- YOU SELL THIS PROPERTY AND THE BUYER FINANCES THE PURCHASE WITH A
  NEW LOAN FROM WORLD.

*AS DESCRIBED IN THE LOAN PROGRAM DISCLOSURE YOU RECEIVED WHEN YOU MADE
YOUR LOAN APPLICATION

** TERRITORIES IN WHICH WORLD MAKES LOANS, AS WELL AS WORLD'S UNDERWRITING
CRITERIA, INCLUDING BUT NOT LIMITED TO APPRAISAL STANDARDS, LOAN-TO-VALUE
RATIOS, AND STANDARDS OF CREDITWORTHINESS, ARE SUBJECT TO CHANGE BY WORLD
WITHOUT NOTICE.

GF173 (2004-03-1)                                   Page 2 of 2                                   CA
DISTRIBUTION.  1 COPY-RETURNED SIGNED TO WORLD    1 COPY-CUSTOMER    1 COPY-LOAN CENTER    1 COPY-LOAN FILE
          [WL4 (2004-03-1)]

**Page 18**

EXHIBIT 8

| WORLD SAVINGS | PICK-A-PAYMENT LOAN |
| --- | --- |
| | REQUEST FOR INITIAL LOAN PAYMENT AMOUNT |

DATE    05/08/06

APPLICANT'S NAME(S) DAYA NAND, ET AL.

PROPERTY ADDRESS: 27324 CAPRI AVE
                  HAYWARD, CA  94545-3308

LOAN NO.  0042880575          LOAN AMOUNT REQUESTED $  276,000.00

I/We hereby request an adjustable rate Pick-a-Payment Loan in the amount shown above
having an initial MONTHLY payment amount of

$  999.58

ALL APPLICANTS MUST SIGN

DAYA NAND                        SHRI MATI

PLEASE SIGN THIS FORM AND RETURN TO WORLD SAVINGS IN
THE ENCLOSED SELF-ADDRESSED POSTAGE PAID ENVELOPE.

GF642 (2004-03-1)                              CA
DISTRIBUTION    1 COPY-RETURN SIGNED TO WORLD    1 COPY-APPLICANT

LENDER'S USE ONLY

718

**Page 20**

EXHIBIT 9

| WORLD SAVINGS | DEFERRED INTEREST ACKNOWLEDGEMENT |
|---|---|

DATE: **05/08/06**

LOAN NO.: **0042880575**

PROPERTY ADDRESS: **27324 CAPRI AVE, HAYWARD, CA  94545-3308**

## IMPORTANT INFORMATION ABOUT YOUR MONTHLY PICK-A-PAYMENT LOAN

You have selected a loan product that lets you choose how much to pay each month from among several choices on your billing statement. As described below, if you make a periodic payment that is less than the interest owing on the loan, you will incur deferred interest and the principal balance of your loan will increase. This document describes deferred interest and your payment options to assist you in determining the payment amount that makes sense for your financial situation. If you have questions, we encourage you to talk with your loan representative or speak with a World Savings loan advisor at 1-888-541-3700.

## WHAT IS DEFERRED INTEREST?

Deferred interest (also known as negative amortization) occurs if your mortgage payment is not large enough to pay all of the scheduled interest due on your loan. For example, if you owe $1,000 in interest in a given period but you make a $900 payment that is authorized by your loan, the $100 shortfall is deferred interest that is added to your loan balance. In subsequent months, you will be charged interest on the higher principal balance. You can pay down any deferred interest on your loan at any time.

## YOUR PAYMENT OPTIONS

Each loan statement will typically offer the following four payment options to give you flexibility in how to pay off your loan*:

(1) Scheduled Principal and Interest: This payment covers interest and principal to pay off your loan within its scheduled term. The scheduled term is 30 years for most loans. When you pay this amount, you will not incur any deferred interest and you will reduce your loan balance.

(2) Interest Only: This payment covers the interest due but does not reduce your loan balance. When you pay this amount, you will not incur any deferred interest

(3) Minimum Payment: This is the smallest amount you are allowed to pay. If you choose this option and the payment is lower than the interest due, you will incur deferred interest which will be added to the principal balance of your loan.

(4) 15-Year Payment Plan: This payment covers all interest due and enough principal to pay off your loan within a 15-year term. When you pay this amount, you will not incur any deferred interest, and you will reduce your loan balance

* Some options may not appear on your loan statement if your Minimum Payment is larger than the Interest Only option or equal to the Scheduled Principal and Interest option, if you have past-due payments, if options change in the future, or for other reasons.

## HOW MUCH SHOULD YOU PAY?

As described above, your loan will generally give you flexibility to pick your payment each billing cycle. You should consider the following when deciding how much to pay.

**The Advantages of Paying More than the Minimum Payment.** When you make more than the Minimum Payment, you can:

- Reduce the total interest you pay over the life of the loan.
- Build equity in your home faster, particularly if you choose the "Scheduled Principal and Interest Payment" or the "15-Year Payment Plan."
- Save money on taxes by deducting the interest you pay (consult your tax advisor).

**Choosing the Minimum Payment.** You may want to choose the Minimum Payment in months when you are managing your cash flow to:

- Pay off credit card or other debts that charge higher interest than your World loan.
- Pay for unanticipated events, such as auto repairs or hospital bills.
- Make home improvements that add value to your home.
- Invest in your employer's retirement plan or build a college fund for your children.

Although making the Minimum Payment may make sense from time to time, it may be in your financial interest to pay more than the Minimum Payment as often as you can and to periodically pay down all or part of any accumulated deferred interest as discussed in the next paragraph.

LENDER'S USE ONLY

**Page 22**

0042880575

## MANAGING YOUR DEFERRED INTEREST BALANCE

Your loan statement will identify any outstanding deferred interest on your loan. You can pay down a deferred interest balance, in full or in part, at any time without penalty. There are good reasons to do so, including a tax deduction in the year the deferred interest is paid (consult your tax advisor). Since your loan limits the amount of deferred interest that you can incur (see below), you should monitor your deferred interest balance. Of course you also have the option of making a high enough payment at any time to avoid incurring any more deferred interest.

## LIMITS ON THE AMOUNT OF DEFERRED INTEREST THAT YOU CAN INCUR

Your loan limits the amount of deferred interest that can accumulate, and you will need to eventually pay down your loan balance. Your loan documents describe two circumstances when we may recalculate (also known as "reamortize") the Minimum Payment to ensure that you pay off your loan by its scheduled maturity date.

- On the tenth annual payment change, and every fifth payment change thereafter
- If your loan balance reaches the principal balance cap stated in your note

  Your loan balance might increase because of deferred interest or for other reasons, such as unpaid property taxes or insurance assessments that are added to the principal of your loan. Loans with an original loan-to-value (LTV) ratio of 85% or less often have a principal balance cap of 125% of the original loan balance, while loans with an original LTV ratio above 85% often have a principal balance cap of 110% or 115%. Your note will identify the principal balance cap for your loan.

When your loan is reamortized, the Minimum Payment may be adjusted to an amount that would pay down all interest and principal by the scheduled maturity date at the interest rate then in effect. Your loan's annual payment cap (typically a 7.5% cap on the annual increase in your Minimum Payment) will not apply when the reamortization occurs.

We would expect that the Minimum Payment after the loan is reamortized would be higher for borrowers who have routinely selected the Minimum Payment and allowed their deferred interest balance to grow, as compared to borrowers who generally make a higher payment or have little or no deferred interest. The amount by which your Minimum Payment will increase when your loan is reamortized will depend on a variety of factors, some of which are in your control (for example, how much you have chosen to pay each month) and others that are not (for example, fluctuations in interest rates during the life of your loan).

## OTHER

If you have questions, we encourage you to speak with a World Savings loan advisor at 1-888-541-3700.

*     *     *

I have read and understand this Deferred Interest Acknowledgement and have been given an opportunity to discuss the deferred interest feature with a representative from World Savings.

Borrower(s) Signature(s):

_____
**DAYA NAND**

_____
**SHRI MATI**

_____

_____

_____

_____

**Page 23**

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101.

On March 27, 2008, I served the following document(s) described as **DECLARATION OF MICHAEL GOLDBERG IN SUPPORT OF WORLD SAVINGS BANK's MOTION TO DISMISS and MOTION TO STRIKE** on the interested parties in this action by placing __ the original __X__ a true and correct copy in an enclosed sealed envelope as follows:

Linda L. Mallette, Esq.
LAW OFFICES OF MALLETTE & LIBONATI
2046 Fairmont Drive
San Mateo, CA 94402

Paul J. Smoot, Esq.
ANDERLINI, FINKELSTEIN, EMERICK & SMOOT
400 South El Camino Real, Suite 700
San Mateo, CA 94402

[X]    (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence by mailing. Under that same practice it would be deposited with U.S. Postal Service on that same day with postage fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    (BY TELECOPIER) By stipulation, I caused such document to be delivered by telecopy transmission to the offices of the addressee.

[ ]    (BY PERSONAL DELIVERY) I delivered such envelope by hand to the addressee.

[ ]    (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]    (FEDERAL) I declare that I am employed in the offices of a member of this Court at whose direction the service was made.

Executed on March 27, 2008, at Pasadena, California.

Jill Ashley
(Print or Type Name)

_____
(Signature of Declarant)

**Page 24**

1   Mark T. Flewelling (#96465)
    mflewelling@afrct.com
2   Christopher A. Carr (#44444)
    ccarr@afrct.com
3   ANGLIN, FLEWELLING, RASMUSSEN
       CAMPBELL & TRYTTEN, LLP
4   199 South Los Robles Avenue, Suite 600
    Pasadena, CA  91101-2459
5   (626) 535-1900
    (626) 577-7764 (Facsimile)

6   Attorneys for Defendant WORLD SAVINGS
    BANK, FSB, renamed and now known as
7   WACHOVIA MORTGAGE, FSB

8

9                     UNITED STATES DISTRICT COURT

10   NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO BRANCH

11

12   DAYA NAND and SHRI MATI,          )   Case No. C-08-01529-SI
                                       )
13              Plaintiffs,            )
                                       )   DEFENDANT WORLD SAVINGS
14        vs.                          )   BANK, FSB's NOTICE OF
                                       )   MOTION AND MOTION TO
15   SCOTT RICHARD SMITH, dba          )   STRIKE; MEMORANDUM OF
     MORTGAGENET 2000; JEFFREY         )   POINTS AND AUTHORITIES
16   JAMES TWOMEY, an individual;      )   [FRCP 12(f)]
     ANGAD SINGH, an individual;       )
17   GREENPOINT MORTGAGE               )
     FUNDING, INC.; WORLD SAVINGS,     )
18   aka WACHOVIA; GMAC MORTGAGE )       Date:  May 9, 2008
     CORPORATION; and DOES FOUR        )   Time:  9:00 A.M.
19   through TWENTY, inclusive,        )   Courtroom:  10
                                       )
20              Defendants.            )
     _____)

21

22        TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

23

24        PLEASE TAKE NOTICE that on May 9, 2008, at 9:00 a.m. in Courtroom

25   10 of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco,

26   California, the Honorable Susan Illston, United States District Court Judge

27   presiding, defendant World Savings Bank, FSB (sued as World Savings, aka

28   Wachovia), renamed and now known as Wachovia Mortgage FSB ("World") will,

1  and hereby does, move pursuant to FRCP Rule 12(f) for an order striking the

2  following portions of the Second Amended Complaint insofar as they pertain to

3  World:

4      1. Paragraph 40, reading "In doing the things herein alleged, defendants

5  acted with malice, oppression and fraud as defined under Civ. Code §3294(c), e.g.

6  willfully and with intent to cause injury to the plaintiffs.  Defendants were

7  therefore guilty of malice, oppression and fraud in conscious disregard of

8  plaintiffs' rights, thereby warranting an assessment of punitive damages in an

9  amount appropriate to punish defendants and deter others from engaging in

10  similar misconduct."

11      2. Paragraph 50, reading "In doing the things herein alleged, defendants

12  acted with malice, oppression and fraud as defined under Civ. Code §3294(c), e.g.

13  willfully and with intent to cause injury to the plaintiffs.  Defendants were

14  therefore guilty of malice, oppression and fraud in conscious disregard of

15  plaintiffs' rights, thereby warranting an assessment of punitive damages in an

16  amount appropriate to punish defendants and deter others from engaging in

17  similar misconduct."

18      3. Paragraph 71, reading "In doing the things herein alleged, defendants

19  acted with malice, oppression and fraud as defined under Civ. Code §3294(c), e.g.

20  willfully and with intent to cause injury to the plaintiffs.  Defendants were

21  therefore guilty of malice, oppression and fraud in conscious disregard of

22  plaintiffs' rights, thereby warranting an assessment of punitive damages in an

23  amount appropriate to punish defendants and deter others from engaging in

24  similar misconduct."

25      4. Paragraph 86, reading "In doing the things herein alleged, defendants

26  acted with malice, oppression and fraud as defined under Civ. Code §3294(c), e.g.

27  willfully and with intent to cause injury to the plaintiffs.  Defendants were

28

1  therefore guilty of malice, oppression and fraud in conscious disregard of

2  plaintiffs' rights, thereby warranting an assessment of punitive damages in an

3  amount appropriate to punish defendants and deter others from engaging in

4  similar misconduct."

5       5.  Item 6 of the prayer, reading "For exemplary or punitive damages."

6       6.  Item 17 of the prayer, reading "For exemplary damages."

7       Grounds for the motion are that plaintiffs fail to plead facts sufficient for an

8  award of punitive damages pursuant to Civil Code §§ 3294(a), (b) and (c), and

9  therefore the quoted material is immaterial within the meaning of Rule 12(f).

10      This motion is based on this notice, the accompanying memorandum of

11  points and authorities, the Second Amended Complaint, the motion to dismiss

12  accompanying this motion, the accompanying Request for Judicial Notice, and on

13  World's argument at the hearing.

14

15                    Respectfully submitted,

16

17  Dated:  March 27, 2008          ANGLIN, FLEWELLING, RASMUSSEN,
                                    CAMPBELL & TRYTTEN LLP
18

19                                  By:_____
20                                      Christopher A. Carr
                                        ccarr@afrct.com
21                                  Attorneys for Defendant WORLD
                                    SAVINGS BANK, FSB, renamed and now
22                                  known as WACHOVIA MORTGAGE,
                                    FSB
23

24

25

26

27

28

WORLD SAVINGS BANK'S MOTION TO STRIKE      #C-08-01529-SI

# MEMORANDUM OF POINTS AND AUTHORITIES

1. <u>PLAINTIFFS FAIL TO PLEAD PUNITIVE DAMAGES PROPERLY</u>

<u>AGAINST WORLD SAVINGS BANK, FSB</u>

Plaintiff fails to properly plead punitive damages against a "corporate employer"[1] pursuant to Civil Code §3294(b). That statute provides:

> "An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."

The statute requires "malice among corporate leaders," specifically its "leadership group of 'officers, directors, and managing agents.'" Otherwise, "ratification" is mandatory. Even "ratification" requires "actual knowledge" that the renegade employee acted "maliciously." *Cruz v. Homebase,* 83 Cal.App.4th 160, 167-168 (2000). In other words, plaintiff must plead and prove that an officer, director or managing agent of defendant either directed, or else knew of and then ratified, the purported conduct giving rise to the punitive damages.

*Scannell v. County of Riverside*, 152 Cal.App.3d 596, 614 (1984) makes this a pleading issue, not just an issue of proof at trial:

> "It is true, as contended by defendant, that plaintiff has not pleaded that acts of employees of defendant corporation were done with the knowledge or under the express direction or ratification of an officer, director or managing agent of the corporation so as to justify exemplary damages against the corporation. (Civil Code §3294.) Hence, defendant's motion to strike allegations pertaining to exemplary damages in this cause of action should have been granted but the general demurrer should have been overruled."

---

[1] Document #4 in the accompanying Request for Judicial Notice shows that World Savings Bank is a corporation.

1    Plaintiffs plead no facts suggesting that any purported "oppression, fraud,

2  or malice" was committed by an "officer, director, or managing agent of the

3  corporation."  Plaintiffs plead no facts showing that World had advance

4  knowledge of any "unfitness of the employee and then employed him or her with

5  a conscious disregard of the rights or safety of others."  And plaintiffs plead no

6  facts showing that World "authorized or ratified the wrongful conduct for which

7  the damages are awarded."  Plaintiffs meet none of the statutory elements of Civil

8  Code §3294(b) insofar as World is concerned, thus justifying an order striking the

9  punitive damage claims as against World.

10    2.  <u>PLAINTIFFS PLEAD NO FACTS THAT EVEN HINT AT MALICE,</u>

11    <u>OPPRESSION OR FRAUD ON THE PART OF WORLD</u>

12    Plaintiffs likewise fail to comply with Civil Code §§3294(a) and (c), which

13  require facts showing malice, oppression or fraud.  Civil Code §3294(c)(1)

14  defines malice as conduct "intended by the defendant to cause injury to the

15  plaintiff or despicable conduct which is carried on by the defendant with a willful

16  and conscious disregard of the rights or safety of others."  The complaint must

17  plead facts showing "evil motive," which "is the central element of the malice

18  which justifies an exemplary award."  *G. D. Searle v. Superior Court*, 49

19  Cal.App.3d 22, 29-30 (1975).  The threshold for pleading and proving "malice" is

20  high:

21    "The malice required implies an act conceived in a spirit of
       mischief or with criminal indifference towards the obligations
22     owed to others.  There must be an intent to vex, annoy or injure.
       Mere spite or ill will is not sufficient; and mere negligence, even
23     gross negligence is not sufficient to justify an award of punitive
       damages."

24  *Ebaugh v. Rabkin*, 22 Cal.App.3d 891, 894 (1972).

25  Plaintiffs plead no facts that even hint at, let alone describe, a "spirit of mischief"

26  or "criminal indifference" on the part of World.

27    Civil Code §3294(c)(2) defines 'oppression' as "despicable conduct that

28  subjects a person to cruel and unjust hardship in conscious disregard of that

1  person's rights." Plaintiff must plead facts showing "despicable conduct";

2  "conduct so vile, base, contemptible, miserable, wretched, or loathsome that it

3  would be looked down upon and despised by ordinary decent people." *Mock v.*

4  *Miller's Mutual Ins. Co.* 4 Cal.App.4th 306, 331 (1992) (held that definition of

5  "despicable conduct" under "oppression" applied to meaning of "malice" as well).

6      The same is true with the pleading of "fraud," which is defined as an

7  "intentional misrepresentation, deceit, or concealment of a material fact known to

8  the defendant with the *intention* on the part of the defendant of thereby depriving

9  a person of property or legal rights or otherwise causing injury." (emphasis added)

10  Civil Code §3294(c)(3). Plaintiff pleads no such facts.

11

12                      Respectfully submitted,

13  Dated:  March 27, 2008          ANGLIN, FLEWELLING, RASMUSSEN,

14                              CAMPBELL & TRYTTEN LLP

15

16                      By:_____

                               Christopher A. Carr

17                                 ccarr@afrct.com

                    Attorneys for Defendant WORLD

18                      SAVINGS BANK, FSB, renamed and now

                    known as WACHOVIA MORTGAGE

19                      FSB

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF LOS ANGELES        )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101.

On March 27, 2008, I served the following document(s) described as **DEFENDANT WORLD SAVINGS BANK, FSB's NOTICE OF MOTION AND MOTION TO STRIKE [FRCP 12(f)]** on the interested parties in this action by placing ___ the original __X__ a true and correct copy in an enclosed sealed envelope as follows:

Linda L. Mallette, Esq.                    Paul J. Smoot, Esq.
LAW OFFICES OF MALLETTE & LIBONATI         ANDERLINI, FINKELSTEIN,
2046 Fairmont Drive                        EMERICK & SMOOT
San Mateo, CA 94402                        400 South El Camino Real, Suite 700
                                           San Mateo, CA 94402

[X]  (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence by mailing. Under that same practice it would be deposited with U.S. Postal Service on that same day with postage fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]  (BY TELECOPIER) By stipulation, I caused such document to be delivered by telecopy transmission to the offices of the addressee.

[ ]  (BY PERSONAL DELIVERY) I delivered such envelope by hand to the addressee.

[ ]  (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]  (FEDERAL) I declare that I am employed in the offices of a member of this Court at whose direction the service was made.

Executed on March 27, 2008, at Pasadena, California.

Jill Ashley                                  _____
(Print or Type Name)                         (Signature of Declarant)

1  Mark T. Flewelling (#96465)
   mflewelling@afrct.com
2  Christopher A. Carr (#44444)
   ccarr@afrct.com
3  ANGLIN, FLEWELLING, RASMUSSEN
     CAMPBELL & TRYTTEN, LLP
4  199 South Los Robles Avenue, Suite 600
   Pasadena, CA  91101-2459
5  (626) 535-1900
   (626) 577-7764 (Facsimile)
6
   Attorneys for Defendant WORLD SAVINGS
7  BANK, FSB, renamed and now known as
   WACHOVIA MORTGAGE, FSB
8

9             UNITED STATES DISTRICT COURT

10  NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO BRANCH

11

12  DAYA NAND and SHRI MATI,              )  Case No. C-08-01529-SI
                                          )
13              Plaintiffs,               )
                                          )  REQUEST BY WORLD SAVINGS
14      vs.                               )  BANK, FSB FOR JUDICIAL
                                          )  NOTICE IN SUPPORT OF MOTION
15  SCOTT RICHARD SMITH, dba              )  TO DISMISS [FRCP RULES 9 and
    MORTGAGENET 2000; JEFFREY             )  12(b)(6)] and MOTION TO STRIKE
16  JAMES TWOMEY, an individual;          )  [FRCP RULE 12(f)]
    ANGAD SINGH, an individual;           )
17  GREENPOINT MORTGAGE                   )
    FUNDING, INC.; WORLD SAVINGS,         )  Date:  May 9, 2008
18  aka WACHOVIA; GMAC MORTGAGE           )  Time:  9:00 A.M.
    CORPORATION; and DOES FOUR            )  Courtroom:  10
19  through TWENTY, inclusive,            )
                                          )
20              Defendants.               )
                                          )
21  _____)

22        Pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, defendant

23  World Savings Bank, FSB ("World") requests the court to take judicial notice of

24  the following documents submitted in support of World's Motion to Dismiss

25  under FRCP Rules 9 and 12(b)(6) and its Motion to Strike under Rule 12(f)..  The

26  ground for the request as to the first three documents is that each such document

27  is (1) a document filed in the Superior Court of Alameda County in Case

28  #HG06295167, and (2) now a document contained in the records of this court by

1   virtue of the Notice of Removal filed by World on March 20, 2008, which

2   contained such document as an exhibit to said Notice.  The ground for the request

3   as to the last two documents is that it they are official records of an administrative

4   agency of the United States.  The authenticity of all five documents is capable of

5   accurate and ready determination by resort to sources whose accuracy can not

6   reasonably be questioned.

7       1.    Original complaint filed by plaintiffs in the Alameda Superior Court

8   case on or about October 25, 2006; a copy of said complaint is attached to the

9   Notice of Removal as Exhibit A.

10      2.    First Amended Complaint filed by plaintiffs in the Alameda Superior

11  Court case on or about January 19, 2007; a copy of said First Amended Complaint

12  is attached to the Notice of Removal as Exhibit B.

13      3.    Second Amended Complaint filed by plaintiffs in the Alameda

14  Superior Court case on or about March 5, 2008; a copy of said Second Amended

15  Complaint is attached to the Notice of Removal as Exhibit C.

16      4.    Certificate of Corporate Existence dated April 21, 2006 on the

17  letterhead of Office of Thrift Supervision, Department of the Treasury; a copy of

18  said certificate is attached hereto as Exhibit 1.

19      5.    Letter dated November 19, 2007 on the letterhead of Office of Thrift

20  Supervision, Department of the Treasury; a copy of said certificate is attached

21  hereto as Exhibit 2.

22

23

24  Dated:  March 27, 2008                ANGLIN, FLEWELLING, RASMUSSEN,
                                         CAMPBELL & TRYTTEN LLP
25

26                                       By:_____
                                              Christopher A. Carr
27                                            ccarr@afrct.com
                                              Attorneys for Defendant WORLD
28                                            SAVINGS BANK, FSB

# EXHIBIT 1



**Office of Thrift Supervision**
Department of the Treasury

1700 G Street, N.W., Washington, D.C. 20552 • (202) 906-6000

**April 21, 2006**

## CERTIFICATE OF CORPORATE EXISTENCE

**REFERENCE:** World Savings Bank, FSB
Oakland, California

 I, Nadine Y. Washington, Corporate Secretary, Office of Thrift Supervision, hereby certify, according to the records of the Office of Thrift Supervision, Department of the Treasury, Washington, DC:

 1. World Savings Bank, FSB, Oakland, California, was chartered under the laws of the United States to transact the business of a Federal savings bank;

 2. The charter of World Savings Bank, FSB, Oakland, California, is in full force and effect;

 3. The Office of Thrift Supervision has not appointed a conservator or receiver for World Savings Bank, FSB, Oakland, California; and

 4. As of April 21, 2006, World Savings Bank, FSB, Oakland, California, is operating as a BIF-insured financial institution.

**Nadine Y. Washington**
**Corporate Secretary**

**Page 4**

# EXHIBIT 2



**Office of Thrift Supervision**
Department of the Treasury

*Nicholas J. Dyer*
*Assistant Regional Director*

Pacific Plaza, 2001 Junipero Serra Boulevard, Suite 650, Daly City, CA  94014–1976
P.O. Box 7165, San Francisco, CA 94120-7165 • Telephone: (650) 746-7025 • Fax: (650) 746-7001

November 19, 2007

John A. Stoker, Esq.
Vice President and Assistant General Counsel
Wachovia Corporation
Legal Division – NC0630
One Wachovia Center
301 South Charlotte Street
Charlotte, NC 28288

Re: World Savings Bank, FSB, Oakland, California
Notice of Amendment of Charter and Bylaws

Dear Mr. Stoker:

This is in response to your letter, dated November 8, 2007, with enclosures, which you filed with the Office of Thrift Supervision (OTS) on behalf of World Savings Bank, FSB to amend the savings bank's charter and bylaws to change its name to Wachovia Mortgage, FSB and reflect a change in the location of its home office. The new home office address is 6825 Aliante Parkway, North Las Vegas, Nevada.

The institution met the requirements of 12 C.F.R. §§ 552.4(b) and 552.5(b)(2), and the proposed amendments will be effective December 31, 2007, as set forth in the Board of Directors' resolution adopting the changes to the charter and bylaws. The filing also met the requirement of 12 C.F.R. § 545.91(b) that the savings bank notify the OTS if there is a change in the permanent address of its home office.

Please feel free to contact me at (650) 746-7025 if there are any questions.

Sincerely,

Nicholas J. Dyer
Assistant Regional Director

cc: Robert Burns, FDIC - Atlanta

**Page 6**

**PROOF OF SERVICE**

STATE OF CALIFORNIA )
                            ) ss.
COUNTY OF LOS ANGELES )

        I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 199 S. Los Robles Avenue, Suite 600, Pasadena, California  91101.

        On March 27, 2008, I served the following document(s) described as **REQUEST BY WORLD SAVINGS BANK, FSB FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS [FRCP RULES 9 and 12(b)(6)] and MOTION TO STRIKE [FRCP RULE 12(f)]** on the interested parties in this action by placing __ the original _X_ a true and correct copy in an enclosed sealed envelope as follows:

| | |
|---|---|
| Linda L. Mallette, Esq.<br>LAW OFFICES OF MALLETTE & LIBONATI<br>2046 Fairmont Drive<br>San Mateo, CA  94402 | Paul J. Smoot, Esq.<br>ANDERLINI, FINKELSTEIN,<br>EMERICK & SMOOT<br>400 South El Camino Real, Suite 700<br>San Mateo, CA  94402 |

[X]    (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence by mailing.  Under that same practice it would be deposited with U.S. Postal Service on that same day with postage fully prepaid at Pasadena, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    (BY TELECOPIER) By stipulation, I caused such document to be delivered by telecopy transmission to the offices of the addressee.

[ ]    (BY PERSONAL DELIVERY) I delivered such envelope by hand to the addressee.

[ ]    (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]    (FEDERAL) I declare that I am employed in the offices of a member of this Court at whose direction the service was made.

        Executed on March 27, 2008, at  Pasadena, California.


__Jill Ashley__                               _____
(Print or Type Name)                     (Signature of Declarant)

1  submitted by:

2  Mark T. Flewelling (#96465)
   mflewelling@afrct.com
3  Christopher A. Carr (#44444)
   ccarr@afrct.com
4  ANGLIN, FLEWELLING, RASMUSSEN
       CAMPBELL & TRYTTEN, LLP
5  199 South Los Robles Avenue, Suite 600
   Pasadena, CA  91101-2459
6  (626) 535-1900
   (626) 577-7764 (Facsimile)

7
   Attorneys for Defendant WORLD SAVINGS
8  BANK, FSB, renamed and now known as
   WACHOVIA MORTGAGE, FSB

9

10                 UNITED STATES DISTRICT COURT

11      NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO BRANCH

12

13  DAYA NAND and SHRI MATI,            )  Case No. C-08-01529-SI
                                        )
14              Plaintiffs,             )
                                        )  (PROPOSED) ORDER GRANTING
15       vs.                            )  WORLD SAVINGS BANK, FSB's
                                        )  MOTION TO DISMISS [FRCP 9 and
16  SCOTT RICHARD SMITH, dba            )  12(b)(6)]
    MORTGAGENET 2000; JEFFREY           )
17  JAMES TWOMEY, an individual;        )
    ANGAD SINGH, an individual;         )  Date:  May 9, 2008
18  GREENPOINT MORTGAGE                 )  Time:   9:00 A.M.
    FUNDING, INC.; WORLD SAVINGS,       )  Courtroom:  10
19  aka WACHOVIA; GMAC MORTGAGE         )
    CORPORATION; and DOES FOUR          )
20  through TWENTY, inclusive,          )
                                        )
21              Defendants.             )
    _____)
22

23       On May 9, 2008, the previously noticed motion of World Savings Bank,

24  FSB to dismiss the Second Amended Complaint came on regularly for hearing.

25  After reviewing the papers submitted in support of and in opposition to said

26  motion, and upon hearing the arguments of counsel in support of and in

27  opposition to said motion, and the court being duly advised in the

28  / / /

1   premises and good cause appearing,

2        IT IS ORDERED:

3        The Second Amended Complaint is dismissed, with prejudice, as against

4   World Savings Bank, FSB.

5

6   DATED:   May _____, 2008     _____

7                      UNITED STATES DISTRICT COURT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(PROPOSED) ORDER GRANTING WORLD SAVINGS BANK'S MOTION TO DISMISS    #C-08-01529-SI

PROOF OF SERVICE

STATE OF CALIFORNIA            )
                              ) ss.
COUNTY OF LOS ANGELES         )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101.

On March 27, 2008, I served the following document(s) described as **(PROPOSED) ORDER GRANTING WORLD SAVINGS BANK'S MOTION TO DISMISS [FRCP 12(f)]** on the interested parties in this action by placing __ the original __X__ a true and correct copy in an enclosed sealed envelope as follows:

Linda L. Mallette, Esq.              Paul J. Smoot, Esq.
LAW OFFICES OF MALLETTE &            ANDERLINI, FINKELSTEIN,
LIBONATI                             EMERICK & SMOOT
2046 Fairmont Drive                  400 South El Camino Real, Suite 700
San Mateo, CA 94402                  San Mateo, CA 94402

[X]    (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence by mailing. Under that same practice it would be deposited with U.S. Postal Service on that same day with postage fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[  ]    (BY TELECOPIER) By stipulation, I caused such document to be delivered by telecopy transmission to the offices of the addressee.

[  ]    (BY PERSONAL DELIVERY) I delivered such envelope by hand to the addressee.

[  ]    (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]    (FEDERAL) I declare that I am employed in the offices of a member of this Court at whose direction the service was made.

Executed on March 27, 2008, at Pasadena, California.


_____Jill Ashley_____            _____
(Print or Type Name)                 (Signature of Delcarant)

(PROPOSED) ORDER GRANTING WORLD SAVINGS BANK'S MOTION TO DISMISS          C-08-01529-SI

1    submitted by:

2    Mark T. Flewelling (#96465)
     mflewelling@afrct.com
3    Christopher A. Carr (#44444)
     ccarr@afrct.com
4    ANGLIN, FLEWELLING, RASMUSSEN
       CAMPBELL & TRYTTEN, LLP
5    199 South Los Robles Avenue, Suite 600
     Pasadena, CA  91101-2459
6    (626) 535-1900
     (626) 577-7764 (Facsimile)

7    Attorneys for Defendant WORLD SAVINGS
     BANK, FSB, renamed and now known as
8    WACHOVIA MORTGAGE, FSB

9

                    UNITED STATES DISTRICT COURT
10
      NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO BRANCH
11

12   DAYA NAND and SHRI MATI,              )   Case No. C-08-01529-SI
                                           )
13                 Plaintiffs,             )
                                           )   (PROPOSED) ORDER GRANTING
14        vs.                              )   WORLD SAVINGS BANK, FSB's
                                           )   MOTION TO STRIKE [FRCP 12(f)]
15   SCOTT RICHARD SMITH, dba              )
     MORTGAGENET 2000; JEFFREY             )
16   JAMES TWOMEY, an individual;          )   Date:  May 9, 2008
     ANGAD SINGH, an individual;           )   Time:  9:00 A.M.
17   GREENPOINT MORTGAGE                   )   Courtroom:  10
     FUNDING, INC.; WORLD SAVINGS,         )
18   aka WACHOVIA; GMAC MORTGAGE           )
     CORPORATION; and DOES FOUR            )
19   through TWENTY, inclusive,            )
                                           )
20                 Defendants.             )
                                           )
21   _____)

22        On May 9, 2008, the previously noticed motion of World Savings Bank,

23   FSB to strike certain portions of the Second Amended Complaint came on

24   regularly for hearing.  After reviewing the papers submitted in support of and in

25   opposition to said motion, and upon hearing the arguments of counsel in support

26   of and in opposition to said motion, and the court being duly advised in the

27   /////

28

1  premises and good cause appearing,

2    IT IS ORDERED:

3    The following portions of the Second Amended Complaint are stricken

4  insofar as said portions pertain to World Savings Bank, FSB:

5    1. Paragraph 40, reading "In doing the things herein alleged, defendants

6  acted with malice, oppression and fraud as defined under Civ. Code §3294(c), e.g.

7  willfully and with intent to cause injury to the plaintiffs.  Defendants were

8  therefore guilty of malice, oppression and fraud in conscious disregard of

9  plaintiffs' rights, thereby warranting an assessment of punitive damages in an

10  amount appropriate to punish defendants and deter others from engaging in

11  similar misconduct."

12    2. Paragraph 50, reading "In doing the things herein alleged, defendants

13  acted with malice, oppression and fraud as defined under Civ. Code §3294(c), e.g.

14  willfully and with intent to cause injury to the plaintiffs.  Defendants were

15  therefore guilty of malice, oppression and fraud in conscious disregard of

16  plaintiffs' rights, thereby warranting an assessment of punitive damages in an

17  amount appropriate to punish defendants and deter others from engaging in

18  similar misconduct."

19    3. Paragraph 71, reading "In doing the things herein alleged, defendants

20  acted with malice, oppression and fraud as defined under Civ. Code §3294(c), e.g.

21  willfully and with intent to cause injury to the plaintiffs.  Defendants were

22  therefore guilty of malice, oppression and fraud in conscious disregard of

23  plaintiffs' rights, thereby warranting an assessment of punitive damages in an

24  amount appropriate to punish defendants and deter others from engaging in

25  similar misconduct."

26    4. Paragraph 86, reading "In doing the things herein alleged, defendants

27  acted with malice, oppression and fraud as defined under Civ. Code §3294(c), e.g.

28

1  willfully and with intent to cause injury to the plaintiffs.  Defendants were
2  therefore guilty of malice, oppression and fraud in conscious disregard of
3  plaintiffs' rights, thereby warranting an assessment of punitive damages in an
4  amount appropriate to punish defendants and deter others from engaging in
5  similar misconduct."

6      5.  Item 6 of the prayer, reading "For exemplary or punitive damages."

7      6.  Item 17 of the prayer, reading "For exemplary damages."

8
9  DATED:  May _____, 2008    _____

        UNITED STATES DISTRICT COURT JUDGE

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROOF OF SERVICE**

STATE OF CALIFORNIA            )
                              ) ss.
COUNTY OF LOS ANGELES          )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101.

On March 27, 2008, I served the following document(s) described as **(PROPOSED) ORDER GRANTING WORLD SAVINGS BANK'S MOTION TO STRIKE [FRCP 12(f)]** on the interested parties in this action by placing ___ the original __X__ a true and correct copy in an enclosed sealed envelope as follows:

Linda L. Mallette, Esq.                    Paul J. Smoot, Esq.
LAW OFFICES OF MALLETTE & LIBONATI         ANDERLINI, FINKELSTEIN,
2046 Fairmont Drive                        EMERICK & SMOOT
San Mateo, CA 94402                        400 South El Camino Real, Suite 700
                                           San Mateo, CA 94402

[X]    (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence by mailing. Under that same practice it would be deposited with U.S. Postal Service on that same day with postage fully prepaid at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[  ]   (BY TELECOPIER) By stipulation, I caused such document to be delivered by telecopy transmission to the offices of the addressee.

[  ]   (BY PERSONAL DELIVERY) I delivered such envelope by hand to the addressee.

[  ]   (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]    (FEDERAL) I declare that I am employed in the offices of a member of this Court at whose direction the service was made.

Executed on March 27, 2008, at Pasadena, California.


Jill Ashley                                _____
(Print or Type Name)                       (Signature of Declarant)