1   LINDA L. MALLETTE, ESQ. St. Bar #104669
    DOMINICK R. LIBONATI, ESQ. St. Bar #111738
2            Law Offices
           MALLETTE & LIBONATI
3          2046 Fairmont Drive
           San Mateo, CA  94402
4            (650) 347-5400

5   Attorneys for Plaintiffs
    Daya Nand and Shri Mati

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

    DAYA NAND and SHRI MATI,      )    NO. C-08-01529-SI
11                                )
            Plaintiffs,           )    THIRD AMENDED COMPLAINT FOR
12                                )    DAMAGES FOR FRAUD AGAINST
    vs.                           )    SCOTT RICHARD SMITH,
13                                )    JEFFREY JAMES TWOMEY AND
    SCOTT RICHARD SMITH, dba      )    ANGAD SINGH; CONSPIRACY TO
14  MORTGAGENET 2000, JEFFREY     )    COMMIT FRAUD AGAINST ALL
    JAMES TWOMEY, an              )    DEFENDANTS; PROFESSIONAL
15  individual; ANGAD SINGH,      )    NEGLIGENCE AND FOR BREACH
    an individual, GREENPOINT     )    OF FIDUCIARY DUTY AGAINST
16  MORTGAGE FUNDING, INC.;       )    SCOTT RICHARD SMITH, dba
    WORLD SAVINGS, aka            )    MORTGAGENET 2000, JEFFREY
17  WACHOVIA; GMAC MORTGAGE       )    JAMES TWOMEY and ANGAD
    CORPORATION, and DOES         )    SINGH; AND FOR DAMAGES FOR
18  FOUR through TWENTY,          )    GROSS NEGLIGENCE, FRAUD AND
    inclusive,                    )    RESCISSION AGAINST
19                                )    GREENPOINT MORTGAGE
                                  )    LENDING, INC., WORLD
20          Defendants.           )    SAVINGS, AND GMAC MORTGAGE
                                  )    CORPORATION; AND FOR
21                                )    ACCOUNTING AND BREACH OF
                                  )    CONTRACT AGAINST GMAC
22                                )    MORTGAGE CORPORATION
                                  )
23                                )
                                  )    JURY TRIAL DEMANDED
24                                )
                                  )
25                                )
                                  )
26                                )
                                  )
27                                )
                                  )
28  _____)

                                 1

Plaintiffs allege:

**FACTS APPLICABLE TO ALL CAUSES OF ACTION**

1.   Plaintiffs are, and at all times relevant to this action, were residents of Hayward, Alameda County, California and are husband and wife.

2.   Two of the three parcels of residential real property that are subject of this action are located in Hayward, Alameda County, California.

3.   Defendant Scott Richard Smith is a licensed real estate broker doing business under the fictitious name of MORTGAGENET 2000, whose principal place of business is in Gilroy, California.

4.   Defendant Jeffrey James Twomey is a licensed real estate sales agent employed by defendant Scott Richard Smith, whose residence is in San Mateo County, California.

5.   Defendant Angad Singh is an unlicensed individual who solicited the subject loans for and on behalf of defendant Scott Richard Smith, whose residence is in San Mateo County, California.

6.   Plaintiffs are ignorant of the true names and capacities of defendants sued in this complaint as DOES 4-20, inclusive, and therefore sue these defendants by these fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that plaintiffs' damages as herein alleged were proximately caused by such defendants.

2

7.   Plaintiffs are informed and believe, and on the basis of that information and belief allege, that at all times mentioned in this complaint, defendants Jeffrey James Twomey, Angad Singh and Does One through Twenty were the agents and employees of each other and were the agents of defendant Scott Richard Smith, and were acting within the course and scope of that agency and employment in doing the acts complained of herein.  Defendants World Savings, GreenPoint Mortgage and GMAC Mortgage Corporation, as assignee of two of the loans that are the subject of this complaint, were substituted as DOES ONE, TWO AND THREE, respectively and added as defendants with the filing of plaintiff's Second Amended Complaint.  All defendants now named in this Third Amended Complaint were the gents and employees of each other and were acting within the course and scope of that agency and employment in doing the acts complained of herein.

8.   Defendant World Savings appointed defendants Scott Richard Smith and Jeffrey James Twomey as its agent to perform the duty of submitting loan applications and loan packages under a written agreement dated February 18, 2000, whereby World Savings appointed Mortgagenet 2000, Scott Smith, as a Preferred Mortgage Broker, assigned number 41771.  The pertinent term of the written agreement is, "A Preferred Mortgage Broker has World Savings' approval to submit loan application packages to World Savings in accordance with its Preferred Mortgage Broker Programs."  The agreement was signed on behalf of World Savings by Dolores Reddicks, Assistant Vice President.

9.   Defendant Greenpoint Mortgage appointed defendants

Scott Richard Smith as its agent to perform the duty of submitting loan applications and loan packages under a written agreement February 2, 2000, whereby it is provided as the object of the agreement, that "The Parties hereto wish to establish a non-exclusive relationship whereby Broker will submit applications for loans to be secured by first or second priority liens against 1-4 family residential properties (the "loans") to Lender on behalf of Broker's clients ("Borrowers") for possible funding by Lender."

10.  On or about March 20, 2006, plaintiff Daya Nand was informed by defendant Angad Singh, a co-worker and friend of plaintiff's for seven years, that he had a mortgage brokerage office of his own and offered to obtain a new loan on plaintiffs' home.  Defendant Singh represented to plaintiffs that he could obtain a much better loan for plaintiffs, particularly that the new loan would be at a fixed interest rate.  Plaintiffs agreed to Mr. Singh's suggestion and hired him to arrange a new loan at a fixed interest rate.  The address is 27324 Capri Avenue, Hayward, California.

11.  At no time during the three transactions that are the subject of this lawsuit did Angad Singh inform plaintiffs that he was not a real estate licensee. In fact, when plaintiff Daya Nand asked Angad Singh if he had a real estate license, Mr. Singh said that yes, he was licensed.  Plaintiff Daya Nand trusted Angad Singh because of their seven year relationship and had no reason not to believe Angad Singh's representation that he was licensed to negotiate secured loans, that he had his own brokerage office with three employees, and that he would obtain

4

a good, fixed interest loan that would save plaintiffs a lot of money.

12. Subsequent to March 20, 2006, defendant Angad Singh negotiated a new loan with World Savings, the same lender who held the purchase money mortgage being paid off and replaced. When loan papers were prepared, defendant Angad Singh called Daya Nand to make an appointment for plaintiffs to sign the loan documents at Mr. Singh's Baskin-Robbins store in Foster City. In that conversation, Mr. Singh said "Everything is o.k. I've saved you a lot of money. What you wanted I have gotten for you." Mr. and Mrs. Nand arrived at the meeting at Baskin-Robbins and sat at a table to wait for the notary public. When the notary arrived, Mr. Singh came from behind his counter and sat with them. Mr. Singh told plaintiffs, "Just sign the papers now and I will explain everything to you later." When the papers were signed and the notary departed, Mr. Nand asked Mr. Singh to explain the papers they had signed. Mr. Singh said, "I'm so busy now. People are waiting. I will come later to your home to explain everything to you. I will save you even more money by explaining how you can make payments every two weeks." Mr. Singh gave plaintiffs a copy of the loan papers before they left the meeting. All of Mr. Singh's words to plaintiffs were in Hindi.

13. On or about May 16, 2006, escrow closed through First American Title Company. Subsequently, but not until approximately August, 2006, plaintiffs learned that they could have negotiated a new loan with their lender, World Savings, without the benefit of a mortgage broker, so long as they were

willing to accept another loan of equal or greater amount, with an adjustable rate and prepayment penalty and a margin equal to or greater than the margin of the existing loan.

14. After close of escrow on May 16, 2006, plaintiffs paid their loan installments, beginning in July, for approximately three months, at which time they requested a family member to read their loan papers for all three loans. They then learned that the new loan on their home was not fixed as represented to them by Angad Singh, but adjustable, was a greater amount than the purchase money loan, had a greater margin than the purchase money loan, and a new three year prepayment penalty. The sum of $11,200.87 was wired to plaintiffs' bank account representing the excess proceeds over expenses, and plaintiffs had not requested that any sum whatsoever be loaned to them above the costs to obtain a new fixed rate loan. Plaintiffs paid a total commission to Mortgage Net the sum of $11,390.00, of which $8,280.00 was in the form of a yield spread advanced by the lender. Plaintiffs paid $3,364.12 for the charges, including escrow fee and title insurance, to refinance their home.

15. Plaintiffs have a new loan on their home that is in every way less beneficial to them than the 30 year loan originally placed as a purchase money loan by the same lender.

16. On or about June, 2006, defendant Angad Singh solicited plaintiffs to provide them a new loan on their commercial investment property in Hayward, California, 459 Ranker Place. Again, Mr. Singh represented to plaintiffs that they should refinance their Ranker Place property to have a fixed rate loan. Mr. Singh represented to plaintiffs that he

would arrange a very beneficial loan for them.  Plaintiffs agreed to refinance with Mr. Singh.  At the time the refinancing was agreed, plaintiffs had a first and second loan on the property.  The first loan had an adjustable interest rate that plaintiffs desired to pay off in favor of a fixed interest rate loan.  Defendant Singh represented to plaintiffs that one loan would replace the two loans that existed at the time of the refinance.

17.  During the pendency of the loan transaction, Mr. Singh informed plaintiffs that they would have to refinance their Sacramento property to obtain funds to cover the expenses of the Ranker refinance.  Plaintiffs permitted Mr. Singh to refinance their Sacramento duplex, 86-88 Del Vista Circle, Sacramento, California.

18.  Neither Mr. Singh nor Mr. Twomey obtained information from plaintiffs to complete a loan application for any of the three loans.  There was no mention at any time that loan applications were or would be submitted on behalf of plaintiffs.

19.  No loan disclosure was provided to plaintiffs by Singh or Twomey for the Ranker Place and Del Vista Circle transactions.

20.  On July 10, 2006, defendants Singh and Twomey came to plaintiffs' home by arrangement made by defendant Singh with plaintiff Daya Nand.  It was arranged that a notary public would arrive.  For approximately a half hour, they talked about work and jobs.  Mr. Singh had a suggestion about a new job for Mr. Nand and promised to help him get a new job.  The notary public arrived with the loan papers.  Mr. Singh said before they signed

the papers that he would explain everything about the papers
later.  When the notary requested if they were ready to sign,
Mr. Singh said with a gesture of his head, "Go ahead."  The
notary turned the pages of both loan transactions and indicated
to Mr. and Mrs. Nand where they were to sign.  When they had
completed signing, the notary asked if Mr. and Mrs. Nand had any
questions.  Mr. Singh answered, "Everything's ok."  The notary
took the original papers and left.  He gave copies to Mr. Singh.
Within three minutes after the notary left, Mr. Singh indicated
that he and his friend had somewhere else to go.  At the door
Mr. Singh said his friend and he worked together and his friend
would help with the new job.  Mr. Twomey said he would speak to
his manager about the job.  Neither Mr. Twomey nor Mr. Singh
ever told plaintiffs that Mr. Twomey was a real estate licensee
who was involved with these transactions.  Mr. Singh only
referred to Mr. Twomey as "his friend" when they arrived at the
house.  Mr. Nand asked Mr. Singh to go through the papers, but
Mr. Singh said he did not have time to do it then.  Mr. Singh
took the copies with him when he left and promised that he would
provide copies of all the papers when he came over to explain
the papers to them.  Mr. and Mrs. Nand have difficulty reading
in the English language and because Mr. Singh urged the signing
without explanation, and because they trusted Mr. Singh due to
their longtime friendship, they did not insist on reading the
documents at the time they signed them before the notary public.
The documents were voluminous and plaintiffs would not have
recognized the important features to read within so much
material.  They relied on their belief that Mr. Singh, their

real estate agent as he represented himself to be, was looking out for their best interests, that he had procured the loans as he had represented them to be, and that his expertise in real estate transactions could be relied on.  At no time did Mr. Singh give an explanation to plaintiffs the content or importance of any of the documents in the stack of documents presented for signature.

21.    Neither defendant Singh, defendant Twomey, nor defendant Smith at any time provided loan document copies to plaintiffs for either the Ranker Place refinance or the Del Vista Circle refinances.

22.    Plaintiffs had no knowledge during the pendency of the three transactions that defendant Scott Richard Smith was the broker in the transactions.  Once defendant Jeffrey Twomey accompanied Angat Singh when he met with plaintiffs during the transactions, but defendant Jeffrey Twomey never informed plaintiffs that defendant Angat Singh was not licensed with the Real Estate Department.  Defendant Jeffrey Twomey never informed plaintiffs that defendant Scott Richard Smith was the broker who had the responsibility to supervise defendant Jeffrey Twomey as his salesman.  Plaintiffs had no knowledge during the pendency of the three transactions that Jeffrey Twomey was only a licensed salesman working for defendant Scott Richard Smith or that Angad Singh had no license to arrange secured loans.

23.    On July 14, 2006, and July 17, 2006 the Ranker Place and the Del Vista transactions closed.

24.    In August, 2006, plaintiffs had to request copies of the loan documents from the title company, Commonwealth Land

9

Title Company in Pacifica, California, because defendants had
not given copies to plaintiffs as promised by Angad Singh.
After requesting a family member to assist plaintiffs to read
the documents, plaintiffs learned the following with respect to
the Ranker Place transaction: There were not one, but two loans
with the same secondary lender, GreenPoint Mortgage funding,
Inc.; both loans have adjustable rate interest provisions; by
the time the first payment came due on the first loan on
September 5, 2006, the plaintiffs were notified that interest
would increase from 3% to 8.125% and the index rate would
increase from 4.43200 to 4.56333 on October 1, 2006; the second
loan from the same secondary lender is adjustable, began at an
interest rate of 9.5% with a cap of 18%; plaintiffs paid
commissions to defendant Scott Richard Smith, dba Mortgagenet in
the sum of $18,643.75, represented as $10,286.25 paid directly
through escrow and $6,857.50 advanced by the lender as a yield
spread premium (rebate of 1% charged to plaintiffs as a higher
interest rate); that Scott Richard Smith, dba Mortgagenet
charged additional fees of $1,500.00 through escrow, including
an "Administrative Fee"; that $70,998.43 from the equity in the
Del Vista Circle property was given to the Ranker Place escrow
to cover the costs of obtaining the new loans; that the new
loans added principal debt of $24,805.59 to cover the costs
incurred in escrow; that the additional costs of obtaining the
loans paid in escrow, exclusive of the sums paid to Scott
Richard Smith, dba Mortgagenet, totaled $3,617.35; that the
original lender charged plaintiffs $24,018.75 as a prepayment
penalty; in three years the payments will increase to $5,227.81,

double what they currently are; that plaintiffs are burdened with a new prepayment penalty provision binding them for three years.  The new loans in every respect were not as represented by defendant Singh, but are less beneficial and more costly to plaintiffs.

25.  When plaintiffs ultimately received and reviewed the loan papers on Ranker Place, they learned that defendants Scott Richard Smith, dba Mortgagenet, Jeffrey Twomey, Angad Singh and Does Four through Twenty, had drafted and submitted a loan application for the loans on all three properties, without conducting an interview, without informing plaintiffs, and without obtaining plaintiffs' signatures prior to submission. The copies provided to plaintiffs show that on the same day plaintiffs signed all the loan documents for both loans (Ranker Place and Del Vista Circle) included in the documents was the false loan application.  Plaintiffs' initials appear on two of the three pages.  Plaintiffs' signatures do not appear on page two, the page that falsely represents plaintiffs' income at approximately two times their actual income.  Plaintiffs discovered that a false and fraudulent loan application was submitted to the lender on the refinance of their residence, as well.  By defendants' fraudulent actions, plaintiffs have been placed in a perilous position relative to their lenders, and could be subject to fines and imprisonment.

26.  Plaintiffs were informed by defendant Singh that in order to obtain refinancing on Ranker Place, they had to refinance their four unit apartment house in Sacramento in order to obtain the funds required for the Ranker Place escrow.

11

Defendant Singh represented that he would obtain a fine and
beneficial new loan for plaintiffs and certainly the new loan
would bear a fixed rate of interest.

27.  With respect to the Del Vista Circle refinance,
plaintiffs were required to seek copies after close of escrow
from the Commonwealth Title Company in Pacifica, California.
Plaintiffs subsequently learned the following by comparison:
plaintiffs' original loan was with a conventional lender, Bank
of America.  Its terms was 30 years fixed at 6.013%, with a
principal balance of $213,212.43 and had no prepayment penalty.
The new loan, arranged by defendants had the following
characteristics: the new loan was from a secondary lender,
GreenPoint Mortgage, Inc.; it bears an adjustable interest, with
negative amortization and a cap of 12%; one month after the new
loan was funded, plaintiffs were given notice that the 2%
interest rate would increase to 8.125% the following month; the
principal balance is $113,188.00 more than the balance on the
Bank of America Loan; plaintiffs paid commissions to defendant
Scott Richard Smith, dba Mortgage Net in the sum of $7,752.00,
comprised of $4,896.00 paid directly from escrow and $2,856.00
as a yield spread advanced by the lender; the costs associated
with escrow for the refinance, exclusive of the broker's
commission, were $2,343.00; the refinance loan bears a
prepayment penalty; that defendants arranged for a loan in
excess of what was required, and $28,532.36 was returned to
plaintiffs, which they had not requested of defendant Singh.

28.  Plaintiffs discovered in the file provided by
Commonweath Title after close of escrow that defendants, either

12

one or all of them, without plaintiffs' knowledge or consent,
had submitted a loan application to the new lender.  The
application had never been presented to plaintiffs nor reviewed
by them.  The loan application, with false and fraudulent
information, was signed by plaintiffs at the same time
plaintiffs signed all the documents for the loans on Ranker
Place and Del Vista Circle, but was never signed by plaintiffs
as part of the loan process.  The income page of the application
does not bear the signatures of plaintiffs.  The income stated
is more than twice the actual income of plaintiffs.  Plaintiffs
had no knowledge that defendants drafted and submitted false and
fraudulent loan applications to the lender in the refinance
transactions of Ranker Place and Del Vista Circle.  Defendants'
fraudulent actions have placed plaintiffs in a perilous position
with their lender, possibly subjecting them to fines and
imprisonment.

**FIRST CAUSE OF ACTION - FRAUD AGAINST DEFENDANTS SMITH, TWOMEY
AND SINGH**

29.  Plaintiffs incorporate all the allegations contained
in paragraphs 1 through 28 as though they were set out in this
first cause of action.

30.  Plaintiffs, upon information and belief, allege that
defendants Scott Richard Smith, dba Mortgage Net 2000, Angad
Singh, Jeffrey Twomey and Does 4 through 20, knew that
fraudulent loan applications were drafted and submitted to the
prospective lenders on behalf of plaintiffs and knew and
intended that plaintiffs not be informed that such false and
fraudulent loan applications were prepared and submitted.

31.  Plaintiffs allege that defendants Scott Richard Smith, dba Mortgage Net 2000, Angad Singh, Jeffrey Twomey and Does 4 through 20, knew that Angad Singh is not a licensed real estate broker or agent, that Angad Singh and Jeffrey Twomey are not licensed real estate brokers, and that Angad Singh and Jeffrey Twomey are agents and employees of Scott Richard Smith, whose identity and existence were not revealed to plaintiffs.

32.  Plaintiffs allege that defendants Scott Richard Smith, dba Mortgage Net 2000, Angad Singh, Jeffrey Twomey and Does 4 through 20, knew that they could not and would not arrange beneficial fixed interest rate loans for plaintiffs but concealed that fact from plaintiffs and further concealed that fact from plaintiffs at the time of close of escrow and thereafter.

33.  Plaintiffs allege that defendants Scott Richard Smith, dba Mortgage Net 2000, Angad Singh, Jeffrey Twomey and Does 4 through 20, knew that plaintiffs would not be capable of making the monthly payments of the adjustable rate mortgages arranged by defendants for them, but failed at all times to so inform plaintiffs that they should not accept the loans offered by defendants.

34.  Plaintiffs allege that all defendants Scott Richard Smith, dba Mortgage Net 2000, Angad Singh, Jeffrey Twomey and Does 4 through 20, knew that no explanation was given to plaintiffs with respect to the contents of any of the four loans arranged by defendants, knew that by not leaving copies with plaintiffs of the Ranker Place and Del Vista loan transactions, that plaintiffs would not and could not discover on their own

1    that the loans were bad for plaintiffs, and that had they known,

2    plaintiffs would have refused to accept the loans, thus

3    depriving defendants of their commissions.

4        35.   All of the acts alleged herein were unknown by

5    plaintiffs during the pendency of the transaction and they

6    relied upon defendants to tell them the truth and to reveal all

7    information to plaintiffs that was necessary for their

8    decisions.

9        36.   All of the acts alleged herein constitute intentional

10   fraud, fraudulent inducement, active concealment,

11   misrepresentation, and misrepresentation by omission on the part

12   of defendants, and all of them.

13       37.   As a consequence of the intentional fraud,

14   misrepresentation, fraudulent inducement, active concealment,

15   and misrepresentation by omission committed by defendants, and

16   all of them, plaintiffs have suffered damages, as hereinafter

17   set forth and to be proven at trial.

18       38.   As a proximate result of the wrongful acts herein

19   alleged, plaintiffs have been generally damaged, including but

20   not limited to emotional damage in an amount to be proven at

21   trial.

22       39.   As a proximate result of the wrongful acts herein

23   alleged, plaintiffs have suffered out of pocket damages in the

24   sum of $73,141.97, representing commissions paid to defendants,

25   costs connected with escrow, and a prepayment penalty.

26       40.   As a further proximate result of the wrongful acts

27   herein alleged, plaintiffs continue to suffer out of pocket

28   damages in a sum that cannot be calculated with certainty until

1  the date of trial, comprised of costs to replace the loans

2  arranged by defendants, loss on possible sales of the

3  properties, interest payment differential, and possibly loss of

4  the properties, or some of them, to foreclosure since plaintiffs

5  cannot keep up with the payments represented in the loans

6  arranged by defendants, all in sums equal to or in excess of

7  $100,000.00.

8      41.  In doing the things herein alleged, defendants acted

9  with malice, oppression, and fraud as defined under Civ. Code §

10  3294(c) , e.g., willfully and with the intent to cause injury to

11  the plaintiffs. Defendants were therefore guilty of malice,

12  oppression and fraud in conscious disregard of plaintiffs'

13  rights, thereby warranting an assessment of punitive damages in

14  an amount appropriate to punish defendants and deter others from

15  engaging in similar misconduct.

16      WHEREFORE, plaintiffs pray judgment against defendants

17  named in this First Cause of Action, and each of them, as

18  hereinafter set forth:

19  **SECOND CAUSE OF ACTION - CONSPIRACY TO COMMIT FRAUD AGAINST ALL**

20  **DEFENDANTS BASED UPON THE FIRST AND SEVENTH CAUSES OF ACTION**

21      42.  Plaintiffs incorporate all the allegations contained

22  in paragraphs 1 through 41, as though they were set forth in

23  this cause of action.

24      43. Beginning on or about March, 2006 and continuing

25  through close of escrow of the four loans arranged by defendants

26  for plaintiffs, defendants Scott Richard Smith, dba Mortgage Net

27  2000, Jeffrey Twomey, Angad Singh, World Savings, now known as

28  Wachovia and Greenpoint Mortgage, and Does Four through Twenty,

knowingly and willfully conspired and agreed among themselves to commit the acts set forth in the First Cause of Action.  The fraud committed by defendants Smith, Twomey and Singh were done in concert with defendants Greenpoint Mortgage Lending, GMAC Mortgage Corporation, as assignee of one of the Greenpoint loans, and World Savings, now known as Wachovia, as a conspiracy to push through loans for which all defendants knew plaintiffs were neither qualified nor able to repay in accordance with the terms and to give loans with prepayment penalties and variable interest rates with a "teaser" rate that was good for only one month.  The defendant lenders appointed defendants Scott Richard Smith, dba Mortgage Net 2000, Jeffrey Twomey and Angad Singh as their agents and employees for the purpose of submitting loan packages to the defendant lenders.  The acts that were knowingly and willfully agreed among all defendants was to look the other way when inconsistencies appeared in the loan applications and submissions or as in the case of World Savings, to disregard the disparate income from the previous loan, and loan the money in total disregard of the borrowers' ability to repay the loans because the terms were so onerous, all to the ultimate detriment and harm to the borrowers.

44.  When defendants, and each of them, committed the tortious acts specified in paragraphs 25, 28, 30 and 33, injury was caused thereby to plaintiffs.

45. Defendants, and each of them, did the acts and things herein alleged pursuant to, and furtherance of, the conspiracy and above-alleged agreement, the final act on the part of the lenders being to fund the loans on unfavorable terms for

1   borrowers who are not qualified and payment of commissions to

2   the broker defendants.

3       46.   Defendants, and each of them furthered the conspiracy

4   by cooperation with or lent aid and encouragement to or ratified

5   and adopted the acts of each of the other defendants, in that

6   none of the defendants corrected the wrongs by informing

7   plaintiffs of the acts, omissions, misrepresentations, or

8   concealments committed directly by each other co-conspirator,

9   nor requested correct income information from plaintiffs prior

10  to funding the loans.

11      47. Plaintiffs are informed and believe and thereon allege

12  that the last overt act in pursuance of the above-described

13  conspiracy occurred on or about July 10, 2006 when defendants

14  Singh and Twomey permitted plaintiffs to sign portions of the

15  fraudulent loan applications, failed to leave copies of all the

16  documents constituting the loan packages for three loans on two

17  properties, failed to describe and explain the documents they

18  requested plaintiffs to sign, and by their failure to inform

19  plaintiffs that defendant Singh was unlicensed, that defendant

20  Twomey was only a sales agent, that all the loans arranged had

21  adjustable interest rates and prepayment penalties, and that

22  both Singh and Twomey worked for an undisclosed broker,

23  defendant Scott Richard Smith.

24      48.   As a proximate result of the wrongful acts herein

25  alleged, plaintiffs have been generally damaged, including but

26  not limited to emotional damage, in a sum to be proven at trial.

27      49.   As a proximate result of the wrongful acts herein

28  alleged, plaintiffs have suffered out of pocket damages in the

sum of $73,141.97, representing commissions paid to defendants, costs connected with escrow, and a prepayment penalty.

50.   As a further proximate result of the wrongful acts herein alleged, plaintiffs continue to suffer out of pocket damages in a sum that cannot be calculated with certainty until the date of trial, comprised of costs to replace the loans arranged by defendants, loss on possible sales of the properties, interest payment differential, and possibly loss of the properties, or some of them, to foreclosure since plaintiffs cannot keep up with the payments represented in the loans arranged by defendants, all in a sum equal to or in excess of $500,000.00.

51.   In doing the things herein alleged, defendants acted with malice, oppression, and fraud as defined under Civ. Code § 3294(c), e.g., willfully and with the intent to cause injury to the plaintiffs. Defendants were therefore guilty of malice, oppression and fraud in conscious disregard of plaintiffs' rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

WHEREFORE, plaintiffs pray for judgment against defendants, and each of them as hereinafter set forth.

**THIRD CAUSE OF ACTION - PROFESSIONAL NEGLIGENCE AGAINST SMITH, TWOMEY AND SINGH**

52.   Plaintiffs reallege and incorporate all the allegations contained in paragraphs 1 through 51 as though they were fully set forth in this cause of action for Professional Negligence.

53.   Defendant Scott Richard Smith, dba Mortgage Net 2000, is a licensed California real estate broker, who had a sales agent Jeffrey Twomey and a non-licensee Angad Singh working as his agent to solicit and negotiate mortgage loans.  As the broker, defendant Scott Richard Smith had a duty to supervise his employees and agents.  As a further element of duty, defendant Scott Richard Smith was professionally obligated to hire only licensed agents to perform the duties for which a real estate license is required.

54.   Defendant Scott Richard Smith, dba Mortgage Net 2000, violated his professional duty to plaintiffs as a licensed real estate broker by hiring a non-licensed person, defendant Angad Singh, to perform the duties for which a license is required. As the supervising broker, defendant Scott Richard Smith is responsible for the tortious and unprofessional acts of his licensed agent and his unlicensed agent for harm caused to plaintiffs by their acts.

55.   Defendant Scott Richard Smith and his licensed agent Jeffrey Twomey and his unlicensed agent Angad Singh, had a professional duty to disclose, in a timely and specified manner, the estimated costs to procure the loan, including the fees and commissions to be paid to the broker, as mandated in the Real Estate Department Regulations, Title 10, Chapter 6, §2840 and 2840.1 and Business and Professions Code §10240.

56.   Defendant Scott Richard Smith and his licensed agent Jeffrey Twomey and his unlicensed agent Angad Singh not only failed to make timely disclosures as required as alleged in paragraph 55, they failed to give disclosures to plaintiffs at

any time, except as specified in the closing documents but not left with plaintiffs as to the loans on Ranker Place and Del Vista Circle.

57.  By drafting and submitting fraudulent loan applications for plaintiffs without the knowledge and consent of plaintiffs, defendants violated, at the very least, California Civil Code 1572.

58.  By charging plaintiffs fees in escrow and by charging fees in excess of what was expended, which plaintiffs allege upon information and belief, defendants and each of them, violated Real Estate Regulations, Title 10, Chapter 6, §2843.

59.  By defendants' acts of failure to disclose, failure to inform plaintiffs of their rescission rights, failure to inform plaintiffs that the loans arranged by defendants for plaintiffs were less beneficial than their existing loans, failure to inform plaintiffs that they were contracting for prepayment penalties and adjustable rate mortgages contrary to their promises and plaintiffs' request, failure to provide copies of loan documents for the Ranker Place and Del Vista transactions, and their submission of false and fraudulent loan applications on all four loans on behalf of plaintiffs without plaintiffs' knowledge and consent, defendants breached their duty to be honest and truthful as mandated by Business & Professions Code 10152, 10176(a)-(c), 10176(a)-(c) and Civil Code 2079.6 and their duty to disclose, as mandated by Civil Code 2079-2079.6.

60.  In all instances of professional negligence as set forth in this cause of action, which list is not inclusive, defendants caused damages to plaintiffs.

61.  As a proximate result of the wrongful acts herein alleged, plaintiffs have been generally damaged, including but not limited to emotional damage, in a sum to be proven at trial.

62.  As a proximate result of the wrongful acts herein alleged, plaintiffs have suffered out of pocket damages in the sum of $73,141.97, representing commissions paid to defendants, costs connected with escrow, and a prepayment penalty.

63.  As a further proximate result of the wrongful acts herein alleged, plaintiffs continue to suffer out of pocket damages in a sum that cannot be calculated with certainty until the date of trial, comprised of costs to replace the loans arranged by defendants, loss on possible sales of the properties, interest payment differential, and possibly loss of the properties, or some of them, to foreclosure since plaintiffs cannot keep up with the payments represented in the loans arranged by defendants, but in no event in a sum less than $100,000.00.

WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as hereinafter set forth.

**FOURTH CAUSE OF ACTION - BREACH OF FIDUCIARY DUTY ALLEGED AGAINST SMITH, TWOMEY AND SINGH**

64.  Plaintiffs incorporate all the allegations contained in paragraphs 1 through 63 as though they were fully set forth in this cause of action.

65.  Defendants Scott Richard Smith, dba Mortgagenet 2000, Jeffrey Twomey, Angad Singh and Does 4 through 20, accepted the responsibility to act as plaintiffs' agents to negotiate and procure a series of secured loans.  As plaintiffs' agents,

defendants, and each of them, are bound to the duties of a fiduciary to his principal.  Defendants, as fiduciaries owed plaintiffs undivided service and loyalty.  Defendants had a duty to treat their principals' affairs with the same standard of care as that of a trustee; to make the fullest disclosure of all material facts concerning the transaction that might affect the principals' decision; and to use the utmost care, integrity, honesty and loyalty in dealings with their principals.

66.  Defendants Scott Richard Smith, dba Mortgagenet 2000, Jeffrey Twomey, Angad Singh and Does 4 through 20, breached their duties to plaintiffs by the following, non-inclusive, list of acts: by promising to obtain fixed interest loans and not revealing that the loans obtained were, in fact, adjustable rate mortgages with prepayment penalties; by failure to disclose the broker's fees and commissions in a timely manner, or at all; by permitting a non-licensee to negotiate the loans and perform other acts for which a license is required without disclosing the identity of the broker fiduciary; by failure to discuss, explain and leave plaintiff copies of the loan documents; by failure to disclose to plaintiffs their right to rescind the loan on their home; by submitting fraudulent and false loan applications without plaintiffs' knowledge; by placing plaintiffs in a difficult financial situation for permitting plaintiffs to give up beneficial loans on good terms to obtain loans at adjustable, higher interest rates and prepayment penalties.

67.  Plaintiffs relied on defendants Singh and Twomey's fulfillment of their fiduciary duties to them because defendant

Singh was a friend and plaintiffs trusted him.

68.  As a proximate result of the wrongful acts herein alleged, plaintiffs have been generally damaged, including but not limited to emotional damage, in a sum to be proven at trial.

69.  As a proximate result of the wrongful acts herein alleged, plaintiffs have suffered out of pocket damages in the sum of $73,141.97, representing commissions paid to defendants, costs connected with escrow, and a prepayment penalty.

70.  As a further proximate result of the wrongful acts herein alleged, plaintiffs continue to suffer out of pocket damages in a sum that cannot be calculated with certainty until the date of trial, comprised of costs to replace the loans arranged by defendants, loss on possible sales of the properties, interest payment differential, and possibly loss of the properties, or some of them, to foreclosure since plaintiffs cannot keep up with the payments represented in the loans arranged by defendants, in a sum at least equal to or in excess of $100,000.00.

71.  In doing the things herein alleged, defendants acted with malice, oppression, and fraud as defined under Civ. Code § 3294(c), e.g., willfully and with the intent to cause injury to the plaintiffs. Defendants were therefore guilty of malice, oppression and fraud in conscious disregard of plaintiffs' rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

**FIFTH CAUSE OF ACTION AGAINST DEFENDANTS GREENPOINT MORTGAGE LENDING, WORLD SAVINGS AND LOAN, aka WACHOVIA, AND GMAC MORTGAGE CORPORATION, AS ASSIGNEE OF TWO OF THE THREE GREENPOINT MORTGAGE LENDING LOANS - FOR GROSS NEGLIGENCE**

72.  Defendants Greenpoint, World and by assignment GMAC, designated and appointed defendants Scott Richard Smith and Jeffrey James Twomey to act as their agents in dealing with the borrowers, plaintiffs herein, by permitting them to assist plaintiffs in filling out loan applications in place and instead of defendant lenders, as required, and by entering into agency or "correspondent" agreements with the broker defendants giving the broker defendants the responsibility to submit loan packages to the lenders in accordance with the lenders' rules and guidelines.

73.  As a consequence of the agency created between the lenders and brokers, the defendant lenders accepted fraudulent and forged loan applications, authorizations to verify income forms, and Good Faith Estimate forms from defendant agent and broker.

74.  In addition to the forged and fraudulent forms accepted by defendant lenders as alleged in paragraph 73, defendant lenders had sufficient information in their files to prove that the purported and forged stated income of plaintiffs was untrue and that plaintiffs were not capable of repaying the loans as offered and closed by defendant lenders, in violation at the very least of 10 California Code of Regulations 1452.  By lending to plaintiffs while approving contradictory supporting information, lenders thereby ratified and accepted the fraud and forgery committed by their own designated agents.

75.  At the time plaintiffs were approved and issued the loans, they had no knowledge that their applications were based upon false information entered and forged by defendant lenders' agents.

76.  As a proximate result of the defendant lenders approving and funding inappropriate loans to plaintiffs, plaintiffs have been damaged because they cannot maintain the payments and are in danger of losing their property.  Also as a proximate result of the fraud and forgery committed by lenders' agents, which acts were ratified and approved by lenders, plaintiffs have expended unnecessary funds by way of application and closing costs, highly inappropriate and outrageously high interest rates, prepayment penalties, loss of equity, loss of creditworthiness, all in excess of $750,000.00.

77.  In order to pursue their remedies, plaintiffs have expended and will continue to expend attorney's fees in sums to be proven after trial.

**SIXTH CAUSE OF ACTION AGAINST GREENPOINT MORTGAGE FUNDING, INC., WORLD SAVINGS AND LOAN, AND GMAC MORTGAGE CORPORATION FOR RESCISSION**

78.  Plaintiffs incorporate all of the allegations of paragraphs 72-77 as though they were repeated here.

79.  As a consequence of the fraud and forgery of lenders' agents, as ratified and approved by lenders, plaintiffs seek rescission of all the subject loans, including discharge of the mortgages (deeds of trust) and cancellation of the promissory notes.  Plaintiffs have been damaged as a result of the fraudulent acts of lenders' agents, and subsequent ratification by the lenders, because they were not made aware that they were

not qualified for the loans the defendant lenders funded because forged and fraudulent loan applications were submitted by the lenders' agent brokers.  Plaintiffs were not informed of the variable interest rates and prepayment penalties that are conditions of the loans because defendant agents informed and assured plaintiffs that they had arranged favorable fixed-rate of interest loans for them.

80.  As a result of the fraud and forgery committed by the lenders' agents Smith, Twomey and Singh, plaintiffs seek to void the fraudulent transactions, seek cancellation of the promissory notes and expungement of the deeds of trust, and consequential damages according to proof.

**SEVENTH CAUSE OF ACTION AGAINST GREENPOINT MORTGAGE LENDING, INC., WORLD SAVINGS AND LOAN, AND GMAC - FRAUD AND FORGERY COMMITTED BY DESIGNATED AGENTS**

81.  Plaintiffs reallege all the allegations of paragraphs 72 through 80 as though those allegations were set forth here.

82.  The designated agents of defendants, Richard Scott Smith, Angad Singh and Jeffrey James Twomey, committed fraud and forgery in their commission of duties under their agency agreements with defendant lenders.  Lenders' own files contain sufficient information for lenders to know that the loan applications overstated plaintiffs' income, that the loan applications were forged, and that plaintiffs were not qualified for the loans approved and given.  Such knowledge on the part of the lenders constitutes fraud on their own part, as well as ratification of the fraudulent acts of their designated agents.  Furthermore, the lender defendants are responsible for the fraudulent acts of their designated agents because the fraud and

1   forgery occurred while the agents were performing the very

2   duties which formed the basis of their agency agreements with

3   the lenders.

4       83.  The form of the fraud and forgery prevented plaintiffs

5   from gaining knowledge that fraud had been committed because

6   plaintiffs were not provided copies of the forged documents in

7   the Ranker Place and Del Vista Circle transactions.  As for the

8   loan on plaintiffs' home, the papers were left with them after

9   they were signed with no explanation by any of the broker

10  defendants as to what documents plaintiffs had signed, as

11  defendant Singh had promised to do.  Plaintiffs relied upon

12  their agents to conduct their business honestly and

13  professionally.

14      84.  As a direct consequence of the fraud, forgery, and

15  misrepresentations committed upon plaintiffs by the broker

16  defendants while performing the duties designated to them by the

17  defendant lenders, plaintiffs have been damaged by holding loans

18  which they are not qualified to maintain, and have been deprived

19  of their rights to exercise rescission had they known of the

20  fraud and inappropriate loans, and have expended extraordinary

21  sums of money by way of commissions, additional interest on the

22  loans to pay the lenders' agents, closing costs, variable

23  interest rates, and prepayment penalties, in sums to be proven,

24  but in excess of $750,000.00.

25      85.  In doing the things herein alleged, defendants acted

26  with malice, oppression, and fraud as defined under Civ. Code §

27  3294(c), e.g., willfully and with the intent to cause injury to

28  the plaintiffs. Defendant lenders were therefore guilty of

malice, oppression and fraud in conscious disregard of plaintiffs' rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

**EIGHTH CAUSE OF ACTION AGAINST GMAC MORTGAGE CORPORATION FOR AN ACCOUNTING**

86.  GMAC held the mortgage on the real property known as 459 Ranker Place, Hayward, California, which was paid in escrow upon the initiation of a GreenPoint Mortgage loan as one of the loans the subject of this suit.  The demand in escrow made by GMAC included, among other things, a demand for the sum of $9,679.27 interest for a period of thirty-two (32) days, i.e. June 16, 2006-July 18, 2006.  Projected to a full year, it constitutes interest in the sum of $110,401.55 for a principal balance of $709,825.59.

87.  When plaintiffs discovered what appears to be a billing error as an overcharge of interest due, plaintiffs sent GMAC notice of the billing dispute on January 18, 2007. Defendant GMAC has refused to respond to the inquiry and dispute given in writing over a year ago.

88.  Plaintiffs request that defendant GMAC be ordered to account to plaintiffs for the overpayment made to defendant as demanded by defendant in escrow No. 56100589-500 RST, at Commonwealth Land Title Company, Pacifica, for payment of loan 0359184832, secured by 459 Ranker Place, Hayward, California in the names of plaintiffs.

**NINTH CAUSE OF ACTION AGAINST GMAC MORTGAGE CORPORATION FOR BREACH OF CONTRACT**

1    89.   Plaintiffs incorporate all the allegations of

2  paragraphs 86 through 88 as though they were set forth hereat.

3    90.   Defendant GMAC Mortgage Corporation's right to

4  calculate and submit a demand for payoff to an escrow is based

5  upon the contractual relationship between plaintiffs and

6  defendant.  The contract is manifested by a deed of trust and

7  promissory note that specify what interest on the loan is owed

8  by plaintiffs.  Defendant GMAC Mortgage Corporation breached the

9  written agreement with plaintiffs by demanding money in excess

10  of the amount owed under the contract.

11    91.   Plaintiffs pray for a refund of the excessive

12  interest charged by GMAC Mortgage Corporation, together with

13  prejudgment interest from the date of taking, i.e. July 18, 2006

14  to the date the excess is restored to plaintiffs.

15    WHEREFORE, plaintiffs pray for judgment against defendants,

16  on all causes of action, as follows:

17    1.   For general damages, including emotional damages in a

18  sum to be proven at trial;

19    2.   For $73,141.97, as special damages incurred to date the

20  escrows closed, and prejudgment interest on that sum;

21    3.   For special damages that will be incurred after close

22  of escrow to the date of trial and beyond that cannot be

23  ascertained at this time, but will represent interest paid on

24  the new loans over what would have been paid on plaintiff's pre-

25  existing loans; losses incurred on hasty sale or foreclosure of

26  the properties, and other consequential damages according to

27  proof, in a sum at least equal to or in excess of $100,000.00;

28    4.   For costs of suit herein incurred; and

5.   For such other and further relief as the Court deems appropriate.

ON THE FIRST, SECOND AND FOURTH CAUSES OF ACTION

6.   For exemplary or punitive damages

ON THE FIFTH CAUSE OF ACTION AGAINST THE LENDERS GREENPOINT MORTGAGE LENDING, WORLD SAVINGS AND LOAN, AND GMAC MORTGAGE CORPORATION, ASSIGNEE OF TWO GREENPOINT MORTGAGE LENDING, INC. LOANS


7.   For all damages caused by defendants for gross negligence in a sum in excess of $750,000.00;

8.   For attorney fees in accordance with the contract;

9.   For costs of suit; and

10.  For such other and further relief as the Court deems appropriate.

ON THE SIXTH CAUSE OF ACTION AGAINST THE LENDERS

11.  For rescission of the secured loans, including cancellation of the promissory notes, expungement of the deeds of trust, and consequential damages.

12.  For attorney fees in accordance with the contract;

13.  For costs of suit; and

14.  For such other and further relief as the Court deems appropriate.

ON THE SEVENTH CAUSE OF ACTION AGAINST THE LENDERS GREENPOINT MORTGAGE LENDING, INC., WORLD SAVINGS, AND GMAC, AS ASSIGNEE OF TWO OF THE GREENPOINT LOANS

15.  For damages in the sum of $750,000.00 according to proof;

31

16.   For costs of suit; and

17.   For exemplary damages

18.   For such other and further relief as the Court deems appropriate.

ON THE EIGHTH CAUSE OF ACTION AGAINST GMAC MORTGAGE CORPORATION

19.   For an accounting for the sums representing interest demanded and taken from plaintiffs;

20.   For a refund of the excess interest paid by plaintiffs;

21.   For prejudgment interest;

22.   For costs of suit; and

23.   For such other and further relief as the Court deems appropriate.

ON THE NINTH CAUSE OF ACTION AGAINST GMAC MORTGAGE CORPORATION

24.   For a refund of the excess interest paid by plaintiffs;

25.   For prejudgment interest;

26.   For costs of suit; and

27.   For such other and further relief as the Court deems appropriate.

JURY TRIAL DEMANDED

Dated: April 22, 2008

_____
Linda L. Mallette, Attorney for
Plaintiffs Daya Nand and Shri Mati
Nand